## GARRISON *v.* HOWE.

The stockholder of a manufacturing corporation organized under the general act (*ch.* 40, *of* 1848) may defeat an action brought to enforce his individual liability for its debts incurred before the capital stock was paid up, by showing that he had already paid, on account of the debts of the corporation, a sum equal to the amount of his stock.

To charge the trustees with individual liability for a debt of the corporation by reason of the failure to file and publish the annual report required by law, such debt must have been contracted during a default, or have existed at the time of a subsequent default.

Under a contract between the plaintiff and the corporation, that the former should deliver and the latter receive and pay for personal property at a future day, a debt does not arise within the meaning of the statute until the delivery of the property.

*It seems* that a stockholder sued to enforce his individual liability, in a case where an account and the enforcing of all such liabilities would relieve him from the whole or a part of the debt claimed, may himself institute a suit for such account and for distribution. *Per* DENIO, J.

APPEAL from the Supreme Court. The plaintiff claimed to be a creditor of The Scotia Steam Mill and Manufacturing Company, a corporation in Schenectady county, organized

under the act of 1848, authorizing the forming of manufacturing corporations without a resort to the legislature. (*Ch.* 40.) He sought to recover against the defendant as a stockholder, under section 10, the whole capital stock not having been paid in; and he claimed that the defendant was likewise liable, as a trustee, under section 12, because the company had not, as he alleged, made the report required by that section. The case was tried before a referee. The fact of the formation of the corporation on the 30th November, 1849; that the defendant was, during the whole time of its existence, a trustee, and a stockholder to the amount of $500; that the company made two reports, namely, on the 20th January, 1851, and on the 19th January, 1852, and no others; that in March, 1852, it failed, and all its property was sold under execution, and that its capital stock had never been wholly paid in, were either proved or admitted.

The plaintiff claimed that his demand arose out of a contract in writing, made by him with the corporation on the 4th December, 1850, by which he agreed to deliver them, and they agreed to receive and pay for, a large quantity of lumber, at a price mentioned. The contract was proved, and it appeared that the plaintiff agreed to deliver a portion of the lumber in May, another portion in June, and the remainder before the 1st day of October, 1851. The company was to give its notes for the lumber, at ninety days, and some of them were to be given in advance of the delivery of lumber. They were to be payable at the Schenectady Bank. The plaintiff then gave in evidence a note purporting to be made by the company, and which was signed by one D. Smith, who was shown to be its secretary and treasurer. It was for $300, and was dated September 5, 1851, payable ninety days after date, at the Schenectady Bank. The defendant objected to the introduction of this note, as irrelevant and immaterial, but did not, so far as appears from the case, make any question as to the authority

Garrison *v.* Howe

of Smith to sign it in behalf of the corporation. Smith testified that the note was given for lumber, or for other notes which had been given for lumber. The plaintiff proved that he negotiated the note to Alfred Noxon, and that the latter recovered a judgment upon it, in an action against the corporation and against himself, the plaintiff, as indorser, on the 9th April, 1852, and that he afterwards paid the amount to Noxon, who assigned to him the judgment against the corporation.

The defendant produced a variety of evidence tending to show that he had paid debts of the company to a large amount, and that he was its creditor to more than the amount of his stock. In connection with this subject, it was shown that some kind of a settlement took place between the defendant and the company on the 24th December, 1851, and that the company on that day gave him its note for $3,164.19, payable two days after date; that he prosecuted the company upon it, as soon as it became due, and obtained judgment by default, on the nineteenth January following, and issued execution thereon. The judgment was satisfied in May thereafter, by the proceeds of the sale of the property of the corporation on the execution. Smith, the secretary, testified that this note was given for moneys advanced and liabilities incurred for the corporation, but he said it did not include all the defendant's liabilities. Some of the payments which were proved were made before and others after the giving of the note for $3,164.19.

The referee's report sets forth his findings of fact and conclusions of law. Among the former are the following: "That there is no evidence of any indebtedness from the defendant to the plaintiff;" that the company discontinued business in March, 1852, and that its real and personal property was sold out for its debts; that the defendant has paid, since March, 1852, debts of the company to the amount of his stock. He also finds, as facts, the recovery of the judgment in favor of Noxon and its assignment to the

Garrison *v.* Howe.

plaintiff. His conclusions of law are, that the judgment is not evidence of a debt to the plaintiff; that the note is not evidence of indebtedness, on account of the failure to prove that Smith was authorized, by the board of trustees, to sign it, and that the payment of debts of the company, by the defendant, established a defence. Hence, he reports that the complaint should be dismissed. The plaintiff's counsel excepted. The defendant had judgment, which was affirmed at a general term, and the plaintiff appealed to this court. The case was submitted on printed points.

*J. A. Hathaway*, for the appellant.

*Platt Potter*, for the respondent.

DENIO, J. The distinct finding of the referee, that the plaintiff had not shown that he was a creditor of the defendant, which is stated as a conclusion of fact, might be conclusive upon every question of the case, if it were not perfectly apparent from other parts of the finding, and from the referee's conclusions of law, that it was erroneous. It is apparently based upon the supposed necessity of proving the authority of the secretary to sign notes on behalf of the corporation; but no question of that sort arose upon the trial. The note was simply objected to, when offered in evidence, as irrelative and immaterial, which, so far from drawing in question the fact of its being the note of the corporation, tacitly assumed that no objection of that sort could be made.

But the finding that the defendant had, since the failure of the corporation, paid towards its debts a larger sum than the amount of his stock, presents a difficulty of a graver character. In *Briggs* v. *Penniman* (8 *Cow.*, 387), which was a bill in Chancery, filed by a creditor against several stockholders of a manufacturing corporation formed under the general act of 1811, the late Court for the Correction

Garrison *v.* Howe.

of Errors decided that the defendants were entitled to be allowed, on account of the liability imposed by the statute, for advances for the benefit of the company, whether such advances were made while it was prosecuting its business or after it had become dissolved. The provision imposing the liability is substantially the same in the two acts, so far as it can affect this question. A distinction is suggested by the plaintiff's counsel between such an action as that of *Briggs* v. *Penniman,* where the application of the aggregate of all the liabilities of the stockholders·was sought to be enforced, and where the judgment would make distribution of that and the other means for the payment of the debts among all its creditors, and an action like the one under review, by a creditor against a single stockholder, in the nature of an action of debt at law. It is true that, where an account is to be taken and distribution made, it would depend upon the relative amount of the debts and of the means of payment whether a particular stockholder would be required to pay the whole or only a part of the amount for which he might be liable under this provision of the statute, whereas in a suit by one creditor against a single stockholder, the whole liability would be enforced, if the debt of the plaintiff was so large as to require it; and on the other hand, if the debt sued for was less than the amount of the defendant's stock, the latter would be required, in that action, to pay only so much as would satisfy the debt, though the case might be such that, upon a general account, the whole extent of his liability would be required to be enforced.

These considerations show that the nature and the results of these two forms of proceeding are widely different. It is, however, well settled, that a creditor may proceed by suit, in the nature of a common law action, against a single stockholder, and both policy and convenience require that he should have that right; for in the case of small debts the proceeding for an account, in the nature of a bill in equity, would be so tedious and expensive as to destroy the value

of the remedy. But if the stockholder thus prosecuted can show that he has already paid, on account of the debts of the corporation, a sum equal to the liability which the statute has imposed, namely, the amount of his stock, he will, so far as that remedy is concerned, have defeated the action. The creditor must, therefore, take care to sue only a stockholder who cannot establish such a defence, or if he cannot find such a stockholder, but ascertains that the case is such that, upon the winding up of the concern, he could realize a part or the whole of his demand, he must adopt that form of proceeding. The doctrine that a creditor may proceed at law against a single stockholder, was settled in the late Supreme Court, in *The Bank of Pough-keepsie* v. *Ibbotson.* (24 *Wend.*, 473.) It was held that the creditor was not required to go into the Court of Chancery for an account, but might proceed directly at law. It was said that if the defendant could show the payment of debts, or a personal charge in respect to him, to the amount of his stock, there was an end to further liability. I will add, that if this were not so, great injustice might be done. Suppose a stockholder to be a creditor to just the amount of his stock; he ought not to be required to pay anything, unless the sum of the corporate debts is larger than the aggregate of all the liabilities of the stockholders. But he cannot, in this class of actions, have an account, because the proper parties are not before the court. He must, therefore, upon the doctrine of the plaintiff in this suit, pay the debt sued for, though in equity he is not liable for any-thing. The rule to be deduced from the case seems to be this: If the creditor cannot find a responsible stockholder, who is not, at the same time, a creditor to the amount of his stock, he must proceed for an account, if he ascertains that such a proceeding will result in recovering his debt. So, if a stockholder be sued to enforce his individual liability in a case where an account and the enforcing of all the lia-bilities would relieve him from the whole or a part of the

debt claimed, he may himself resort to a suit for such account and for distribution. This I understand to be the view of the court in *The Bank of Poughkeepsie* v. *Ibbotson,* and it is probably as convenient a rule as can be established in the present state of the law. It would add to the security of debts of this description, and in my judgment would have a salutary operation, if stockholders who are officers and managers of corporations were precluded, by legislative authority, from interposing such a defence as this, when sued to enforce their statutory liability. Their power over the affairs of the corporation enables them, in contemplation of its insolvency, and when its condition is unknown to its creditors, to exhaust their liability as stockholders, by making preferential payments to favored creditors, and, by means of this defence, to set all others at defiance.

We cannot review the referee's finding upon this question of fact, although we cannot fail to see that the case was a suspicious one upon the evidence. On the eve of the failure of the company, the defendant took a large judgment for his claims against and liabilities for it, and the whole of the judgment was collected by the sale of its property on execution. After this, he made payments on account of certain debts of the company, for which he was liable as its surety. Now, without a more intelligible account than the evidence presents, it is impossible to say whether these subsequent payments were for liabilities embraced in the judgment, or for fresh ones assumed by the defendant afterwards, or existing at the time and not included in the judgment. He has, however, satisfied the referee that such payments constituted him a creditor for their amount, and we cannot, upon this appeal, disturb that finding.

Corporations, under this act, are required to make, publish and file a report of their condition, within twenty days after the first day of January in each year; " and if any of said companies shall fail so to do, all the trustees of the company shall be jointly and severally liable for all the

debts of the company then existing, and for all that shall be contracted before such report shall be made." (§ 12.) There was a failure to make a report in January, 1850, the company having only been organized in November in the preceding year; but reports were made at the proper time in 1851 and 1852. The plaintiff's note was given September 5, 1851. It was given on account of a prior indebtedness for lumber; but when that indebtedness accrued was not shown. If it was before the report of 1851, the defendant was liable as a trustee, on account of the default in 1850; for, although the company had been but a short time in operation, it was not, on that account, excused from complying with the directions of the statute. The plaintiff shows that he was under a contract to furnish lumber, which was entered into in December, 1850; but it is not shown that the lumber for which the note was given was furnished under that contract, though it is very probable that the fact was so According to the contract, all the lumber to be furnished by the plaintiff was to be delivered before the 1st day of October, 1851, and for it the plaintiff was to have the company's notes, at ninety days, payable at the Schenectady Bank. The note sued on was so payable. This, with the fact positively proved, that it was given for lumber, would, I should think, have enabled the referee to find, in the absence of any evidence to the contrary, that it was one of the notes given for lumber, pursuant to the contract. But he has found nothing upon that question, his views being that the plaintiff had not proved a demand of any kind.

We do not think a debt for lumber furnished under the contract, subsequent to its execution, can be said to have been contracted when the agreement was signed. That instrument contains mutual stipulations, by the plaintiff to furnish and by the defendant to pay for the lumber; and there is no debt in existence until lumber has been delivered. If the statute were simply a remedial one, it might be said that the plaintiff's case was within its equity; for the gene

ral object of the law doubtless was, besides enforcing the duty of making reports for the benefit of all concerned, to enable parties proposing to deal with the corporation to see whether they could safely do so. The company was in default, respecting the report, when the plaintiff committed himself by signing this contract. If a report had been made in January, 1850, it may be that the facts which it must have disclosed would have come to the knowledge of the plaintiff, and have deterred him from dealing at all with the corporation. But the provision is highly penal, and the rules of law do not permit us to extend it by construction to cases not fairly within the language. That contemplates the simple case of a debt contracted during a default in making a report. When this note was given, in September, 1851, there was no default, for a report had been made in January in that year. A subsequent default, the debt being unpaid, would equally have charged the trustees; but another report was made in January, 1852, and before a further one was required, the corporation had failed. It is not contended that there was any subsequent failure to report, which would affect the case. The defendant was not, therefore, liable as a trustee, under the provisions of this act.

The judgment should be affirmed.

All the judges concurring,

*Judgment affirmed.*