By the Court. —Freedman, J.
Conceding that the liability of trustees imposed by the statute under which this action is brought, is in the nature of a penalty for misconduct in office, and that the statute should be strictly construed so as to hold trustees liable only for their own misconduct, and not for the default or misconduct or default of their predecessors on successors in office, I am nevertheless of the opinion that the plaintiff’s complaint was dismissed upon an erroneous exposition of the law.
True, the defendant’s term of office expired on August 6, 1878, and there was no proof that he acted after that time. He therefore could not be held for any debt contracted subsequent to the day named. But in the preceding month of January, while he was a trustee, the company had failed to make the annual report required by law. Upon such default all the trustees then in office, of which the defendant was one, became jointly and severally liable for all the debts of the company then existing, whether contracted by them or their predecessors, and for all that were subsequently contracted during their continuance in office and the continuance of the default (Vincent v. Sands, 33 Super. Ct. 511; affirmed, 58 N. Y. 673).
The debt of the plaintiffs was not existing at the time of the default, but as no report was subsequently filed, the defendant became liable for it, provided it was contracted between January 20, 1878, and August 6, of the same year.
The question is therefore presented as to when a debt of a corporation may, as against a trustee in default, *234 be held to have been contracted within the meaning of the statute. The learned judge below was of the opinion that, as against the defendant, no debt can be deemed to have been contracted within the meaning of the statute, unless a right of action existed thereon against the corporation before the expiration of defendant’s term of office. If this were the correct construction of the statute, trustees, by simply resigning before the maturity of the debts which they themselves created during the continuance of their default, could escape all liability. The statute is not tó be so strictly construed as to defeat the very purpose for which it was enacted, and no case can be found that warrants such a course. In Jones v. Barlow (62 N. Y. 203), it is true, Allen, J., said : “No penalty attaches for the default if there be no debt; it is the debt which, under the statute, gives the right of action, and which is recovered. If there be no obligation giving a present right of action against the company, no debt or duty which may be presently demanded from the corporation, there is no debt or duty which can be demanded under the statute as a penalty against the trustees. The language of the statute is quite explicit, and imposes the liability for the debts of the company, and there is no debt within the meaning of the statute if the day of payment has not arrived.” But an examination of the whole case shows that the question now under consideration was not, involved in that case, but that the remarks quoted were made with reference to the fact that three out of . o the ten notes upon which a recovery was had against the defendants as trustees, were not due at the time of the commencement of the action ; that for that reason the action would have failed if it had been brought upon the three notes against the corporation, and that consequently no right of action existed upon said three notes against the trustees.
In the case of Shaler and Hall Quarry Co. v. Bliss *235 (27 N. Y. 297), which is also strongly relied on by the respondent, Selden, J., used the following language : “ The true interpretation of the statute, I think, is that three circumstances must concur in point of time, to render a trustee liable, viz.: the existence of the debt; the existence of the default in making the report; and the trusteeship. Where these concur, the trustee is liable for all debts, if he was such trustee when the default occurred. If he was not a trustee at the time of the default, but became such afterwards, then his liability is limited to debts created while he remains trustee, and while the default continues.....” This language does not decide the question at issue. It was used with reference to the fact that one day after the defendants had ceased to be trustees and others had been elected in their places, the plaintiffs sold to the Hudson River Stone Dressing Co. a quantity of stone, and received the acceptances of said company therefor, which at maturity were dishonored.
These and other cases cited by the respondent do not therefore help him.
The true doctrine is that a debt is contracted when, in consideration of value received by the corporation, a payment is to be made, no matter whether at once or at a future period. The mere execution of a contract between the seller and the corporation, to the effect that the former shall deliver, and that the latter should receive and pay for, personal property at a future day, does not of itself amount to the contraction of a debt within the meaning of the statute, but upon the delivery of the property according to the contract the debt springs into existence. This must be so upon principle, and it is in accord with all the reported cases, and especially with the reasoning in Garrison v. Howe (17 N. Y. 458); Whitney Arms Co. v. Barlow (63 N. Y. 62); and S. C. (68 N. Y. 34).
That being so, the fact that credit was given is un *236 important, as long as the period for which it was given has expired at the time of the commencement of the action. While the credit runs, the liability on the part of the trustees who created the debt during the existancepf a default, is dormant, but upon maturity of the debt and the failure of the company to meet it, the dormant liability ripens into a cause of action.
In the case at bar the McKillop & Sprague Co., with the exception of one or perhaps two items, received the goods according to contract while the defendant held the office of trustee and the default continued, and to that extent a debt was contracted within the meaning of the statute, for which the defendant, upon the expiration of the credit and the failure of the company to discharge it, became liable. There is no pretense that the action was prematurely brought.
For the foregoing reasons the dismissal of the complaint cannot be sustained upon the ground on which it was put, and unless the respondent is entitled to have the ruling upheld upon some other ground, there must be a new trial.
As to the objection that no reference to the statute was indorsed on the summons, the defect, if it was one, was cured by the defendánt’s appearance and by Ms answering without objection the complaint which was served with the summons (Bissell v. New York Central & H. R. R. R. Co., 67 Barb. 385).
The defendant and respondent also urged, that in consequence of the amendment of section 12 of chapter 40 of the Laws of 1848, by chapter 510 of the Laws of 1875, the McKillop & Sprague Co., as a corporation existing since 1872, was not required to make any report in 1878.
Prior to this amendment the statute read: “ Section 12. Every such company shall annually, within twenty days from the first of January, make a report, &c.”
Since the said amendment the statute reads: “ Sec *237 tion 12. Every such company shall, within twenty days from the first day of January, if a year from the time of the filing of the certificate of incorporation shall then have expired, and, if so long a time shall not have expired, then within twenty days from the first day of January in each year after the expiration of a year from the time of filing such certificate, make a report, &c.”
The effect of an amendment of a statute made by enacting that the statute " is amended so as to read as follows,” and then incorporating the changes or additions with so much of the former statute as is retained, is not that the portions of the amended statute which are merely copied without change, are to be considered as having been repealed and again re-enacted, nor that the new provisions or the changed portions should be deemed to have been the law at any time prior to the passage of the amended act. The parts which remain unchanged are to be considered as having continued the law from the time of their original enactment, and the new or changed portions to have become law only at and subsequent to the passage of the amendment (Ely v. Holton, 15 N. Y. 595).
Thus, in Knox v. Baldwin (80 N. Y. 611), the decision, aside from the reasoning, went upon the ground that a company organized in 1868, but which had not been in existence a full year on the first day of January, 1869, would not, under the law as it now reads, have been required to make a report in 1869.
This still leaves it undetermined what the requirement of the statute as to annual reports since its amendment is in respect to corporations then over a year old. This question depends wholly upon the construction to be given to the said 12th section, as amended in 1875. Upon this point the defendant contends that inasmuch as by the amendment the word “annually” was dropped, and a clear distinction was *238 drawn between such companies as were then over a year old and such companies as were then under that age, the construction to be put upon the section as amended is, that all companies more than a year old on the first of January, 1876, should within twenty days after the said date make a report, and that thereupon they should be absolved from making any further annual report; but that all companies less than a year old on the first of January, 1876, should within twenty days after the first day of January next after their arrival at that age, and within twenty days after the first of January in every succeeding year, make a report, &c. This contention was followed by the further claim that inasmuch as the McKillop & Sprague Co. had filed its certificate April 15,1872, and the amended statute had come into operation in 1875, and the company had complied with it by making its report within twenty days from the first of January, 1876, there was no law which required it to make any more reports.
The construction contended for is so much opposed to what was, up to the year 1875, and since that time, beyond doubt the settled policy of this and other States in respect to corporations generally, and to the reason of the rule requiring reports for the benefit of the public, that in accordance with well established principles it should not be adopted, unless the legislative intent to make so radical a change clearly appears.
After much deliberation, I have been unable to discover any such intent. On the contrary, I think the legislative indent was to preserve the requirement of a report from every company, organized or to be organized under the general manufacturing act, at a fixed and regular time in every year, and that the purpose of the amendment simply was to absolve a company at the occurrence of the period fixed for that purpose from the duty of making the report, if at such time it was not yet a full year in existence. This I take to be *239 the true interpretation and construction of the 12th section of the statute, as amended in 1875. To arrive at that conclusion it is only necessary to supply a comma after the word “ January” where it occurs for the second time. When that is done, the words “in each year” relate to the word “January” as used with reference to both classes of companies, and accord and harmony exist not only between the different parts of the section, but also between the section as a whole and the long prevailing policy of the law. To do this involves a less violent presumption than would have to be resorted to in case the word “January,” where it first occurs, were held to stand wholly unrelated, in respect to the year intended thereby, to the succeeding portions of the section.
The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellants to abide the event.
Sedgwick, Ch. J., and Russell, J., concurred.