MARTIN, J., concurred; MERWIN, J., not sitting.

Judgment and order reversed, and a new trial ordered before another referee, with costs to abide the event.

WALLACE & SON, RESPONDENTS, *v.* FREDERICK WALSH AND OTHERS, APPELLANTS.

*Failure to have an annual report of a corporation signed by a majority of the whole number of trustees mentioned in the certificate of incorporation, although it is signed by a majority of the whole number actually holding that office* — 1848, *chap.* 40, *sec.* 12.

In an action, brought to recover from the trustees of a corporation, created under the general manufacturing act, an indebtedness of such corporation, upon the ground that it had not made the annual report required by section 12 of chapter 40 of the Laws of 1848, as amended by chapter 510 of the Laws of 1875, it appeared that, in the certificate of incorporation of the company, the number of trustees was fixed at twelve; that some time prior to the signing of the report in question, by reason of vacancies and resignations, the number of trustees had been reduced to nine, and that at subsequent elections for trustees only nine trustees had been elected; that the report for the year in question had been made, in form, to conform to the statute and was signed by six of the trustees of the corporation.

*Held*, that as, in point of fact, there were actually in existence only nine trustees at the time when the said report was made, that said report had been signed by a "majority of trustees" of the corporation, and that it was a sufficient compliance with the provisions of the statute, and the trustees were not liable in this action.

Appeal from a judgment in favor of the plaintiff, entered in Onondaga county upon a decision made at a Special Term held in that county in November, 1888.

Plaintiff is a foreign corporation existing under the laws of the State of Connecticut. In February, 1883, a corporation was organized in the city of Syracuse, N. Y., under the provisions of the act of the legislature, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," passed February 17, 1848, and the acts amending the same, under the name of the "Wolfe Stove Manufacturing Company." Its principal place of business was the city of Syracuse. In March, 1885, the name of the corporation was changed to "Syracuse Stove Company," by an order made at a Special Term of the Supreme Court held in Onondaga county. In the certificate of incorporation filed, the number of trustees mentioned who should manage the affairs of the company for the first year was fixed at twelve. The number was not reduced, in accordance with the terms of chapter 269 of the Laws of 1860, or the amendment thereof passed in 1878. From and after the 1st day of January, 1887, and until the 26th day of June, 1888, the date of the commencement of this action, the defendants were trustees of the Syracuse Stove Company. In the months of March and April, 1888, the Syracuse Stove Company made its five several promissory notes, in all amounting to the sum of $2,591.43, and delivered the same to the plaintiff. It appears that the notes were given for goods sold by the plaintiffs in the fall of 1887.

There was found by the trial court, from the evidence, the following facts: "Between January 1st and January 20th, in each of the years 1886, 1887 and 1888, said Syracuse Stove Company made, filed in the Onondaga county clerk's office, and published in a newspaper published at Syracuse, N. Y., a report or statement in writing, purporting to be the annual report of said corporation, made pursuant to the provisions of section 12, chapter 40, Laws of 1848, as amended by chapter 510, Laws of 1875, which said statement or report made in 1888 was in words and figures as follows:

"ANNUAL REPORT OF SYRACUSE STOVE COMPANY.

"STATE OF NEW YORK, ⎰ *ss. :*
   ONONDAGA COUNTY, ⎱

"We, J. Emery Eaton, L. E. Marquisse, F. O. Alsop, F. A. Hale, Charles R. Alsop, David Stevens, trustees of the Syracuse Stove Company, and a majority thereof, and the said J. Emery Eaton, being president of said company, do hereby certify and report :

"That the capital stock of said company is $100,000. That of the said capital stock, sixty thousand five hundred dollars thereof has been paid in in cash, and thirty-nine thousand and five hundred dollars thereof has been issued in payment for property necessary for the company's business. That the existing debts of said company do not exceed seventy-nine thousand dollars.

"Witness our hands the 18th day of January, 1888.

"J. EMERY EATON,
"*President.*

"L. E. MARQUISSE,
"F. O. ALSOP,
"DAVID STEVENS,
"F. A. HALE,
"CHARLES R. ALSOP,
"*Trustees.*

"STATE OF NEW YORK, ⎰ *ss. :*
   ONONDAGA COUNTY, ⎱

"J. Emery Eaton being duly sworn, says that he is president of the Syracuse Stove Company aforesaid, and that the foregoing annual report is true to the best of his knowledge, information and belief.

"J. EMERY EATON.

"Sworn to before me, this 18th ⎱
   day of January, 1888. ⎰

"SAMUEL R. STEARN,
"*Notary Public, Onondaga County, N. Y.*

"Indorsed : Filed January 18th, 1888.

"(A report bearing date the 15th day of January, 1886, and a report bearing date the 19th day of January, 1887, of like character,

was made and filed and published in the respective years mentioned in a newspaper published in the city of Syracuse)."

It was also found by the trial court that " Each of said reports was signed and verified by the president of said Syracuse Stove Company, or of its board of trustees, and was also signed by four or five other trustees of said company; each of said reports contained all the statements, and was, in form and substance, as required by section 12, chapter 40, Laws of 1848, as amended by chapter 510, Laws of 1875, and the trustees so signing each of said reports were a majority of the elected and acting trustees of said Syracuse Stove Company at that time."

It was also found by the trial court that " The trustees of said Syracuse Stove Company, in making, filing and publishing the annual report aforesaid, intended, honestly and in good faith, to comply with the provisions of section 12, chapter 40, Laws of 1848, as amended, and there was no intent or design on their part to evade the provisions of said section, or to make any untrue or incorrect statement as to the financial condition and affairs of said corporation, or to deceive or mislead any of its creditors, or other persons having dealings with said corporation, in any particular whatever, but said Syracuse Stove Company and its trustees, in making said reports, endeavored, honestly and in good faith, to correctly state and make public all the information as to the financial affairs and condition of said company, which the statute requires to be stated and published."

The trial court refused to find that " The reports made, filed and published by said Syracuse Stove Company, as hereinbefore found, were, in form and substance, as required by section 12, chapter 40, Laws of 1848, as amended, and were signed and verified by the president of said corporation, and were signed by a majority of the trustees of said corporation within the meaning of the provisions of section 12." The defendants took an exception to that refusal. The trial court also refused to find that the plaintiff has " failed to establish a cause of action against the defendants herein, or either of them, and its complaint should be dismissed, with costs." There was an exception to such refusal. There was a motion by the defendants for a nonsuit, which was refused, and an exception was taken.

Several of the trustees having resigned, the directors concluded to reduce the number to nine, and to elect only nine trustees, and in

January, 1886, and in January, 1887, and in January, 1888, only nine trustees were elected by the stockholders of the said company, and during those years the company, in fact, had but nine trustees, who constituted the board of trustees during such years.

*Smith, Kellogg & Wells,* for the appellant Stevens.

*Knapp, Nottingham & Andrews,* for the appellants Welch, Lane and McCarthy.

*Ide & Hubbard,* for the appellants Alsops, Eaton, Hale and Marquisse.

*Hastings & Gleason,* for the respondent.

HARDIN, P. J. :

Plaintiff is not a creditor of the defendants. It seeks to enforce a liability imposed upon trustees of a manufacturing corporation in virtue of section 12 of the manufacturing act. As the provisions of the statute are penal in their nature they must receive a strict construction. (*The Whitney Arms Co.* v. *Barlow et al.,* 63 N. Y., 63.)

As was said in *Bruce* v. *Platt et al.* (80 N. Y. 381): " The statute in question (Laws of 1848, chap. 40, § 12) is penal, and not to be extended by construction ; that in an action to enforce a liability thereby created, nothing can be presumed against the defendants, but that every fact necessary to establish their liability must be affirmatively proved. (*Garrison* v. *Howe,* 17 N. Y., 458 ; *Miller* v. *White,* 50 id., 137 ; *Whitney Arms Co.* v. *Barlow,* 63 id., 62.)" The same principle was recognized in *Blake* v. *Griswold* (104 N. Y. 617), where the court remarks : " The right and liabilities of parties under the penal provisions of the Manufacturing Act are not only regulated by special provisions of law, but are wholly created by such special provisions, and have no existence outside of the exceptional and peculiar authority and regulation of the statute." It has been repeatedly held that the object of the provision requiring reports to be made, in so far as it " relates to creditors or persons dealing with the corporation, appears to have been to give such notoriety of the pecuniary condition of the company, through the publication of its annual statements, as to deprive it of credit if it should be unworthy of it." (*Shaler & Hall Quarry Co.* v. *Bliss,* 27 N. Y., 297.) To the same

effect is *Garrison* v. *Howe* (17 N. Y., 466); and in announcing that doctrine, as well as in considering the general features of the case then in hand, Judge DENIO observes: " But the provision is highly penal, and the rules of law do not permit us to extend it by construction to cases not fairly within the language." (*Merchants' Bank* v. *Bliss*, 35 N. Y., 412; *Wiles et al.* v. *Suydam* 64 id., 173.)

Chapter 316 of the Laws of 1878, amending chapter 269 of the Laws of 1860, prescribes a mode for increasing the number of trustees to not more than thirteen, and for reducing the number to not less than three, in permissive language. The mode there prescribed, in effect, is that existing trustees of any corporation, or a majority of them, shall make and sign a certificate declaring how many trustees of the corporation shall have the future management of its business. Said certificate shall be acknowledged by the trustees, signing the same and filed in the office of the clerk where the original certificate was filed and a duplicate in the office of the secretary of State. And this act also provides that if the number shall be reduced " the number stated in such certificate * * * shall be deemed the number of trustees of such corporation to be elected according to said act," and who shall have the management and regulation of such corporation until the next election. It is to be observed that the section does not, in terms, forbid any other mode of reduction of the number of trustees. It is well understood that a corporation may cease to exist by abandonment or by non-user. Here we have a case that indicates that the trustees and stockholders voluntarily abandoned the number of trustees prescribed in the original certificate. Vacancies had been brought about by resignations and the number reduced to nine, and the stockholders in 1886, 1887 and 1888, accepted the situation and only elected nine trustees, so that, in point of fact, there were actually in existence only nine trustees. And it is literally true that the trustees who managed the said corporation's affairs in office in 1886, 1887 and 1888 were limited to nine, in virtue of the action of the board of trustees, and in virtue of the action and acquiescence of the stockholders. And when we take up section 12 of the manufacturing act, which requires a " majority of the *trustees* " to make, sign and publish a report, we find that the reports in question corresponded with the physical fact, to wit, that six were a majority of

the existing nine trustees, there being no other trustees then in office constituting the board of management of the corporation in question. Nine persons were *de facto* the trustees. The majority of that number, in each of the years already referred to, signed the report in question. The trustees exercised the power conferred upon them to reduce the number who should manange the affairs, but they omitted to certify and file the evidence of such action in the public offices.

We have given attention to the case of *Moore* v. *Rector, etc.* (4 Abb. N. C., 51), cited in the opinion of the learned judge at Special Term. That was a case involving the validity of a bond and mortgage given by a religious corporation organized under chapter 60 of the Laws of 1813. That statute provided, in terms, that unless the rector, if there was one, and at least one of the church wardens and a majority of the vestrymen should be present, there should be no quorum for the transaction of business. And it was there held that a lesser number could not exercise the statutory powers of the corporation. We do not regard that case as satisfactorily supporting the conclusion reached at the Special Term. It has been held that the statute requiring the report to be made, signed, filed and published within twenty days from the first of January is directory, and the publication thereafter will avoid the penalty. Here we have a case where the object of the statute, to wit, the giving of proper information to the public of the financial condition of the company, seems to have been attained. And we have a case where a majority of the trustees having charge and control of the affairs of the company, a majority of the trustees in office, a majority of the number of trustees assented to by the board of trustees year after year, and also assented to by the stockholders year after year, signed, filed and published the reports of the financial condition of the company. Apparently there was a substantial compliance with the requirements of the statute. Under these circumstances, we are not inclined to impose the penalty prescribed by the statute, which declares " a joint and several liability " upon the trustees, as they have, in good faith, made and published reports, unless the ultimate court shall so hold. These views lead us to differ with the Special Term in the conclusion reached upon the facts appearing in the appeal book.

Judgment reversed and a new trial ordered, with costs to abide the event.

MERWIN, J., concurred; MARTIN, J., not voting.

Judgment reversed and a new trial ordered, with costs to abide the event.