## RISDON IRON & LOCOMOTIVE WORKS v. VON STORCH et al.

(Circuit Court, M. D. Pennsylvania.   January 29, 1909.)

No. 8, January Term, 1904.

1. CORPORATIONS (§ 342*) — LIABILITY OF DIRECTORS FOR CORPORATE DEBTS — MONTANA STATUTE.
   Civ. Code Mont. 1895, § 451, which requires the directors of stock corporations to make an annual report showing the paid-up capital and the indebtedness of the corporation and provides that if they fail to do so they shall be jointly and severally liable for all debts of the corporation then existing or which may be thereafter contracted until such report shall be made, but that if the report shall be made after the time therein specified they shall not be liable on account of the prior failure to make report for debts thereafter contracted, is intended to make directors liable for their own defaults only, and new directors are not liable for debts existing at the time of their election because of a failure of their predecessors to make the required report.   If they continue the default until the time for making the next annual report, and then make such report, they are liable for debts contracted by them in the meantime, but no others, and if they file the omitted report within a reasonable time after their election they are chargeable with no failure of duty and incur no liability.
   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 342.*]

2. CORPORATIONS (§ 342*) — LIABILITY OF DIRECTORS FOR CORPORATE DEBTS — MONTANA STATUTE.
   Under such statute the indebtedness of a corporation for property purchased becomes fixed at the latest on its delivery, and the fact that by the contract payment therefor is deferred until after a new board of directors

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

has been elected does not render its members liable thereon because of the failure of their predecessors to file the required report.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 342.*]

3. CORPORATIONS (§ 342*) — LIABILITY OF DIRECTORS FOR CORPORATE DEBTS — MONTANA STATUTE—"EXISTING INDEBTEDNESS"—NEW YORK DECISIONS.

Where a corporation contracted for the purchase at an agreed price of property to be thereafter delivered, the indebtedness therefor was incurred at the time of the contract, and became an existing indebtedness within the meaning of the statute, and the fact that the property was not delivered until after new directors had been elected did not render them personally liable therefor because of the failure of their predecessors to file the required report. The New York decisions in this respect are not to be followed.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 342.*]

4. CORPORATIONS (§ 342*) — LIABILITY OF DIRECTORS FOR CORPORATE DEBTS — MONTANA STATUTE.

Assuming, however, that such indebtedness was not incurred within the meaning of the statute until the property was delivered, the new directors could not be held therefor where delivery was made before they had been in office long enough to have had reasonable time to ascertain the condition of affairs and remedy the default of their predecessors, and they were therefore not chargeable with any dereliction of duty.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 342.*]

On Trial to the Court Without a Jury.

T. J. Walsh and W. J. Torrey, for plaintiffs.

H. A. Knapp and E. B. Little, for defendants.

ARCHBALD, District Judge. This is an action to enforce against the defendants, as directors of the Western Montana Placer Mining Company, the liability imposed by the Montana statutes for failure to file an annual statement of the financial affairs of the company.

The facts are as follows: The company is a Montana corporation, and the defendants were chosen directors at the annual meeting held January 8, 1901, and served as such for that year, filing a financial statement in due form at the required time in September following. The default on which liability is charged occurred the year previous, in September, 1900—before they were elected. The plaintiffs' claim is for the balance due on a gold gravel-dredger, which they contracted to build and set up for the company on Nine Mile creek, Mont. The contract for it was signed on June 1, 1900, and it was agreed that it should be completed within five months, or by November 1, following. Work on it was duly begun and prosecuted, and the pontoon or float was finished and in place by September, 1900, when the default occurred on which the defendants' liability is predicated. But the whole dredger was not finished until January, 1901, but was completed and delivered within the first few days of that month, or before the defendants' election, the price to be paid for it being charged up on the books of the plaintiff company a day or two later, on January 10th. The price of the dredger was $35,500, payable $5,000 down, and $5,000 in 30, 60, 90, and 120 days afterwards, with a final payment of $10,500, 30 days after its completion. All the installments were paid except the last, but default to the extent of $10,000 having been made

on that, a mechanic's lien was entered against the dredger for that amount, with extra material and labor furnished of $850.73; and on May 7, 1902, a judgment for $12,402 was recovered, on which execution was issued and a sheriff's sale had, at which $7,500 was realized, which, after taking out the costs, $105.53, was credited on the judgment, leaving $5,007.50, which, with interest at 8 per cent., the Montana rate, is now sought to be recovered. Some of these figures may not be very material, but they make for accuracy. The following, however, are important. Included in the amount last named, and going to make up the judgment recovered, were the following:

| | | |
|---|---|---|
| Balance due for extra freight and hauling, over and above $20.00 per ton, allowed by the contract.............$1,620 51 | | |
| Less lumber furnished by defendants' company........... 1,040 00 | | $580 51 |

Material and labor furnished by plaintiffs, independent of the contract:

| | | |
|---|---|---|
| April 12, 1901....'.........................................$ | 48 26 | |
| "    24,   "    ..................................... | 108 59 | |
| May  1,   "    ..................................... | 8 50 | |
| "    10,   "    ..................................... | 43 80 | |
| June 3,   "    ..................................... | 16 52 | |
| "    5,   "    ..................................... | 44 55 | 270 22 |
| | | $850 73 |

The bearing of this will appear later.

Outside of that which is included in the judgment, claim is also made for material and labor furnished by the plaintiffs as follows:

| | | |
|---|---|---|
| Aug.  30, 1901........................................ $391 00 | | |
| Sept. 5,   "    ........................................ 33 72 | | |
| Oct.  4,   "    ........................................ 53 92 | | $478 64 |

| | |
|---|---|
| On which is to be credited Aug. 15, cash paid................................... | 139 87 |
| Leaving ........................................ | $338 77 |

Before the bill of October 4th was contracted, however, the defendants, as already stated, on September 16, 1901, as directors of the company, duly made and filed the annual report required for that year; and in January, 1902, their successors were elected, and they ceased to act.

The statute of Montana, on which the liability of the defendants is asserted, is section 451 of the Civil Code of 1895, which is reproduced in the margin.[1] No Montana decisions have been cited which construe

---

[1] "Sec. 451. Every corporation having a capital stock, shall annually within twenty days from and after the first day of September make a report which shall state the amount of capital and the proportion thereof actually paid in and the amount of existing debts, and which shall be signed by the president, and a majority of the directors inclusive of the president, and shall be verified by the oath of the president, vice president or secretary of such corporation; and shall be published in some newspaper of the town, city or village, or if there be no newspaper published there, then in some newspaper published in some city, town or village nearest to the principal office or place of business of such corporation and filed in the office of the clerk of the county where the principal office or place of business of corporation shall be lo-

it, and the case is therefore to be disposed of, so far as concerns the questions here involved, as one of first impression, except as light is thrown upon it by the New York decisions, from which state the law is taken, and which are therefore recognized as more or less controlling. Its terms are not so clear as to preclude construction, and that construction is of course to be adopted which will best effectuate the purpose of the enactment, due regard being had at the same time to the rights of the respective parties.

It is clear, both on reason and authority, that no responsibility as to existing debts of the company attached to the defendants upon their becoming directors in January, 1901, because of the failure of the preceding board to file the annual statement due the September previous. Each set of directors is penalized by the statute for its own acts and omissions only, and it is only as new debts are contracted by a succeeding board while the default continues that they are made liable thereby. A new board could not with justice forthwith on assuming office be charged with the consequences of what had gone before, which, not being in the management at the time, they were unable to prevent, and the result of which to themselves they would, in that case, be powerless to avert, the utmost promptitude on their part, after their election, in filing a report, not being effectual to discharge a liability which, on their being chosen directors, ipso facto attached. Indeed, as was pointed out in Boughton v. Otis, 21 N. Y. 261, with such an interpretation of the statute, by which at the moment of taking office those elected became personally involved for the debts then due, it would be next to impossible to secure careful and responsible directors to supplant a preceding, reckless, and improvident board. A juster and a sounder view, as it is declared, is that the board of directors guilty of the default, and retiring from office, remain liable for antecedent or existing debts; and that their successors, if they continue the default until the time for making the next annual report, are liable for the debts contracted by them meantime, but for no others, if they then comply; while, if they promptly obey the requirement of the law by filing the omitted report, they escape all liability, as is just, there being then no failure of duty on their part; but if they do not, they properly incur the hazard of the debts which they themselves contract, but not those with which they have had nothing to do, based upon their supposed responsibility for the default of

cated. If any such corporation shall fail so to do, all the directors of the corporation shall be jointly and severally liable for all debts of the corporation then existing, or which may be thereafter contracted until such report shall be made and published or filed, provided, however, that if within ten days after such failure a director or directors shall make and publish or file as aforesaid an affidavit or affidavits stating that the failure was due to no fault or neglect of his or theirs, and stating also that within the said twenty days, he or they requested the president or a sufficient number of the other directors whose residence was known to the affiant to join with him or them in making report, such director or directors shall not be liable under this section.

"If the required report be made and published or filed after the time herein specified the directors shall not, on account of the prior failure to make report, be liable for the debts thereafter contracted."

their predecessors, which neither principle nor policy requires them to assume. Or, as it is succinctly put in Shaler Quarry Co. v. Bliss, 27 N. Y. 297:

"If he [the defendant] were not a trustee at the time of the default, but became such afterwards, then his liability is limited to debts contracted while he remains trustee, and while the default continues."

This is the established doctrine of the New York courts, and is the one to be accepted and applied here. And according to it, the defendants incurred no liability by virtue of their election as directors January 8, 1901, for any indebtedness then existing, but only for that which was of their own contracting subsequently until, at the proper time in September following, they made a report. Their responsibility for the balance due on the dredger depends, therefore, in this view, on whether it was an existing indebtedness when they went into office.

The dredger was contracted for, as it will be remembered, on June 1, 1900, and was to be completed by November 1st, but was not finished and set up, so as to make the company chargeable with it, until January 10, 1901, at the latest, or two days after the defendants were elected. This appears not only by the charge on the plaintiffs' books, where the price is entered up on that date, but also by the depositions of Mr. Mead, the secretary, who had charge of that part of the plaintiffs' business, who expressly says that the dredger was completed in January. It was assumed at the hearing that this was a clerical mistake for June, but upon further consideration it is evident that it was not; for which we have not only the entry on the books, which has been referred to, but also the adjustment of freights in March, which could not well be made with the work in progress up to June. With the price, also, charged up on January 10th, the probability is that, as I have found above, the machine was in fact completed and delivered at a somewhat earlier day in that month. The work of assembling and setting it up having been done in Montana, where it was to operate, it would take several days for the report of its completion to reach the head office at San Francisco, and this would naturally, if not necessarily, be awaited before the price would be charged up on the books, which would carry the delivery back of the time when the defendants took office, thus relieving them from liability therefor.

It is said that the last installment on the dredger was not payable until 30 days after the work was done, and that thus the debt came due beyond question after the defendants were in office. But the liability was complete upon performance, and it was then that the indebtedness became fixed, which being before the defendants' election, no liability for it attached. The fact that payment was deferred until a later date did not make it any the less a debt at the time of completion, it being in this respect like the case of a note or bond, which, as we shall presently see, takes rank as a debt from its date, without regard to when it becomes due.

This disposes of the case, so far as the dredger is concerned, but there are other considerations by which the same result is reached. On principle, the debt of the dredger must be regarded as having

been contracted when the order for it was given, and the agreement made, by which the one party undertook to construct and the other to receive and pay for it; and, if so, the sum to be paid was an existing indebtedness, within the meaning of the statute, in September, 1900, when the failure to file an annual statement occurred, by which the directors then in office, and not their successors, became bound. It was an obligation of the company to be reckoned with from the start, and neither in any provision for the future nor in any financial statement could it be left out. It is true that ultimate liability was conditioned upon performance. But this did not make it contingent; and once the condition was performed, the liability became fixed. It was one, moreover, which faced the directors who were in office when the default occurred, which it is thus no hardship to require them to meet. While, on the other hand, if the time of delivery is to control, and it falls within the incumbency of a succeeding board, who are to be held for it on that account, they are made liable for that which they had no part in ordering, and which they could not refuse to accept, and thus in no sense could be said to contract, in disregard of the provision of the statute that, when not guilty of the original omission, directors shall be liable during its continuance only when that is the case.

It must be confessed that, if the New York decisions are to be followed, this is not the law. In Garrison v. Howe, 17 N. Y. 458, the plaintiff in December, 1850, agreed to deliver lumber in different lots at a price named, which the defendant company was to take and pay for, giving its notes from time to time, as deliveries were made. An annual report, due in January, 1850, was not filed, the company having been organized only a couple of months, and the directors not realizing that it was required; but there were reports, at the proper time, in 1851 and 1852. A note having been given in September, 1851, for lumber delivered about that time, it was held that the debt which it represented was not contracted when the agreement for it was executed in December, 1850, at which time there was an existing default, and that there was no debt in existence by which they could be charged until and except as deliveries were made under it, at which time, in 1851, there was no default, a report having been duly filed in January of that year. This is the first case in which the question came up, and the decision was manifestly influenced by the hardship involved, the court declaring that the statute was highly penal, and not therefore to be carried beyond its exact terms; thus affording an example of the adage that hard cases are often the making of bad precedents. It has become the settled law of the state, however, and is too firmly fixed to be overthrown. Jones v. Barlow, 62 N. Y. 202; Whitney Arms Co. v. Barlow, 63 N. Y. 62, 20 Am. Rep. 504; Id., 68 N. Y. 34; Trinity Church v. Vanderbilt, 98 N. Y. 170; Gold v. Clyne, 134 N. Y. 262, 31 N. E. 980, 17 L. R. A. 767. By way of exception, if not at variance with this, it is, however, held that a fixed obligation, such as a note or bond, or rent reserved on a lease, is an indebtedness of the corporation for which the directors become liable upon the subsequent failure to file an annual report, even though

in either case it does not fall due until a later date, when they are not in office, the debt being held to be created at the time the obligation is given, and not when it matures. Lee v. Jacob, 38 App. Div. 531, 56 N. Y. Supp. 645; Ginsburg v. Von Seggern, 59 App. Div. 595, 69 N. Y. Supp. 758, affirmed 172 N. Y. 662, 65 N. E. 1116; Stieffel v. Tolhurst, 67 App. Div. 521, 73 N. Y. Supp. 1034; Thistle v. Jones, 123 App. Div. 40, 107 N. Y. Supp. 840. The contingent liability of a corporation as indorser on a note not due stands differently, and is correctly held not to be an existing debt within the meaning of the law. Witherow v. Slayback, 158 N. Y. 649, 53 N. E. 681, 70 Am. St. Rep. 507.

Notwithstanding this array of authorities, however, I am not convinced, and, not being bound by them, I adhere to the views expressed above, which seem to me to be sustained by considerations which I cannot disregard, that, in a case such as we have here, the debt is incurred at the time the obligation is entered into out of which it grows, and becomes an existing indebtedness, within the meaning of the statute under discussion, from that time, the liability for which, on the failure to file an annual report, attaches to the directors whose default this is, and that it cannot rightly be said to be contracted or incurred by a subsequent board, so as to make them liable, simply because it matures by performance and becomes payable after they have come in.

There is, however, still another view by which the defendants are relieved. Let it be assumed, contrary to what is found above, that the dredger was not completed and delivered prior to their election as directors on January 8, 1901, and not, in fact, until January 10th, two days afterwards, when the price was charged up by the plaintiffs on their books. It could not have been later than that, under the evidence, there being no right to make the charge until the price had been earned by performance, until which it is not to be supposed that this would be done. Let it be assumed, also, that not until then was the indebtedness incurred within the meaning of the law. But, even so, the defendants would not be made liable thereby. They were clearly entitled to a reasonable interval after their election to acquaint themselves with the affairs of the company, and to supply, when they had learned of it, the annual report which their predecessors had neglected to make, which, if they themselves made with reasonable promptness, no liability as to anything attached. Boughton v. Otis, 21 N. Y. 261. But having been only elected January 8th, and the debt in controversy becoming due within two days, on January 10th, they could not within that brief time be expected to meet this duty, so as to be chargeable, if they did not, with a continuance of the default. Or, in other words, the debt having become due before they could be called upon to act, it cannot, upon the construction of the statute most unfavorable to them, be regarded as one which was contracted by them while in default, for which they would thereby be bound. It may be that this leaves no one for the plaintiffs to look to outside of the company itself; not the retiring directors, because they were no longer in office when the debt matured (Sinclair v. Fuller, 158 N.

Y. 607, 53 N. E. 510); nor yet the incoming board, because they had not had time to make a report. But with that we are not concerned. The case is one of strict law, which is not to be so construed as to work injustice, nor to be deviated from to favor either side. An easy escape from any such situation would be to hold, as contended for above, that the indebtedness was incurred when the dredger was ordered, and an additional argument for it is afforded thereby. But if this is not agreed to, still the plaintiffs had it in their own hands to avoid the dilemma by advancing or retarding the delivery, and there is no occasion, therefore, to help them out to the detriment of the defendants, who had no such chance. It is true that no report was filed by the latter until September came around again. But that does not change the result. They were liable to the plaintiffs as the case stood, at the time the debt matured, on January 10th, or not at all, and nothing after that, according to the statute, made them answerable, until the time came for filing the next annual report.

This disposes of the balance due on the dredger, and the claim for extra freight, $580.51, necessarily goes with it. While this may not have been adjusted until March 29th, when it was entered on the books, it was actually incurred in connection with the delivery of the different parts of the dredger, which were manufactured in San Francisco and shipped to Montana, and can therefore receive no other or better consideration than the debt due for the dredger itself.

No claim, also, can be made for the bill of October 4, 1901, $53.-92. Before this was contracted, on September 19, 1901, an annual statement was filed, and, the defendants thereafter being in no default, no liability for it was incurred.

But the same cannot be said as to bills contracted for material furnished and labor performed at different dates from April to September. These were for extras, outside of the dredger contract, and not provided for in it, and, having been ordered and settled during the defendants' incumbency, they are directly responsible therefor; and, the default of the previous September not having been cured after abundant time for doing so, the liability imposed by the statute attaches, and they must accordingly pay. Chandler v. Hoag, 2 Hun, 613. It is true that a part of these bills were included in the judgment recovered in Montana. But they do not necessarily thereby lose their identity, or become inseparably merged in it. Nor is suit brought on the judgment, as such, here, but on the several items, independently considered, which go to make it up. There is therefore due from the defendants to the plaintiffs the sum of $555.07, with interest at 8 per cent. from September 5, 1901, together making $882.-19; but no more.

Let judgment be entered for the plaintiffs for this amount.