**James E. BLAIR and Bertha N. Blair, Appellants,**
**v.**
**Iron MUELLER, Appellee.**
**No. 6800.**

United States Court of Appeals
Tenth Circuit.

Jan. 26, 1962.

386

C. K. Sayler, Topeka, Kan. (Fisher, Patterson, Sayler & Summers, Topeka, Kan., Robert Kingsley, and Bromley & Kingsley, Denver, Colo., were with him on the brief), for appellants.

Selby S. Soward and Max Jones, Goodland, Kan., for appellees.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

This case presents for determination the question whether in the factual circumstances hereinafter outlined, section 17–2806, General Statutes of Kansas 1949, rendered a director of a corporation organized under the laws of that state personally liable for a debt of the corporation incurred in connection with the acquisition of a radio and television station.

With an exception not having any present bearing, the statute forbids a corporation formed under the act to incur any debts until there has been filed in a specified county an affidavit of the treasurer of the corporation stating in substance that there has been fully paid in the amount of capital which the articles of incorporation state will be paid in before the corporation commences business; in presently pertinent part it imposes personal liability on a director who participates in a transaction in violation of the section;

and it also imposes personal liability on an absent director who fails to dissent upon learning of the action. Section 17-3101 provides in presently pertinent part that a director shall be deemed qualified as such when he shall have filed written acceptance of his election and not before. And section 17-4009 provides that no suit shall be brought against any director for any debt of a corporation of which he is such director until judgment is obtained therefor against the corporation and execution on such judgment is returned unsatisfied, in whole or in part.

Tri-State Television, Inc. held title to a radio and television station at Goodland, Kansas. James E. Blair and wife Bertha N. Blair owned all of the stock of the corporation. By written agreement entered into on February 21, 1959, the Blairs granted to Wallace L. Vander Jagt and his assigns an option to purchase all of such stock for $25,000 in cash and a promissory note of $125,000, secured by real estate and chattel mortgages. The option was to be exercised within thirty days from the date thereof and was subject to approval of the Federal Communications Commission of the transfer of the stock and license to Vander Jagt or his assigns. It was stated in the agreement that the Blairs understood Vander Jagt represented a group of individuals interested in developing the station, and that such option should be assignable by him to other persons or firms. The agreement was effectively extended to April 4, at midnight. On April 4, Leslie E. Whittemore, purporting to act as president of Tri-State Radio, Inc., sometimes hereinafter referred to as Radio, advised the Blairs that such corporation was the assignee of Vander Jagt; and that it elected to exercise the option. The articles of incorporation of Radio were filed in the office of the Secretary of State of Kansas on May 1, 1959; on May 4, the board of directors adopted a resolution ratifying and confirming the exercise of the option; and on July 1, the Federal Communications Commission authorized the transfer of the license.

On August 7, the Blairs and Radio executed a written agreement intended to clarify the terms of the option agreement and to set out more in particular the obligations of the parties under it. Radio executed its promissory note in the sum of $125,000 payable to the Blairs. The note was dated August 7, 1959, and recited that it was secured by real estate and chattel mortgages on the real estate, equipment, and chattels of the corporation located at Goodland. Radio also executed a real estate and chattel mortgage to secure such note. The chattel mortgage was dated August 7. The date of the real estate mortgage is not shown. Iron Mueller was elected a director of Radio on August 7. He participated in meetings of the directors on August 7 and August 8. His acceptance of the position of director was dated August 8. At the meeting held August 8, the directors authorized the execution of the note, the real estate mortgage, and the chattel mortgage. The affidavit disclosing the paid-in capital of Radio was not filed until May 13, 1960.

On May 24, 1960, Radio filed its petition in bankruptcy and was adjudged a bankrupt. The Blairs filed their claim in the bankruptcy proceeding. The assets were sold and the Blairs received a net of $46,511.71 on such claim. The Blairs then instituted this action against Mueller to recover judgment against him under section 17-2806, supra, for such unpaid balance. All parties filed motions for summary judgment. Evidence was adduced at the hearing on such motions. It was stated as a fact in the opinion of the court that the note was made and executed on August 7. Judgment was entered for Mueller, and the case came here on appeal.

Section 17-2806, supra, has application only in a situation in which the indebtedness is the primary obligation of a corporation. The personal liability which it imposes upon a director is collateral to that of the corporation. Harrison v. Remington Paper Co., 10 Cir., 140 F. 385, 3 L.R.A.,N.S., 954, certiorari

denied, 199 U.S. 607, 26 S.Ct. 747, 50 L.Ed. 331. And section 17–4009, supra, expressly withholds exercise of the right of action to enforce such collateral liability until judgment has been obtained against the corporation and execution on such judgment has been issued and returned unsatisfied, in whole or in part. No judgment was entered against Radio and no execution was issued and returned unsatisfied, in whole or in part. But the adjudication in bankruptcy of Radio relieved the Blairs of the necessity of complying with the statute in respect to obtaining judgment against Radio and causing execution thereon to issue and be returned unsatisfied as a condition precedent to maintaining this action against Mueller. Shellington v. Howland, 53 N.Y. 371; Flash v. Conn, 109 U.S. 371, 3 S.Ct. 263, 27 L.Ed. 966. And see Sleeper v. Norris, 59 Kan. 555, 53 P. 757.

■ As monetary sanction for the incurring of debts without the affidavit of the treasurer of a corporation respecting the paid-in capital having been previously filed, the statute renders personally liable "the officers who participated therein and the directors, except those who dissented therefrom and cause their dissent to be filed at the time in the registered office of the corporation, or who being absent, so filed their dissent upon the learning of such action * * *." The contention is advanced that under the terms of the statute an officer must participate in an offending transaction in order to be personally liable while a director is liable if the transaction occurs during the time he is such director even though he does not participate therein. We are unable to share that view. We are persuaded that the legislative purpose was to impose liability upon officers and directors alike for a violation of the statute in respect to the incurring of debts prior to the filing of the affidavit relating to the paid-in capital. And we think that the statute is limited in scope and effect in a case of this kind to debts incurred while the person against whom liability is asserted was an officer or director. We do not believe that the statute was intended to bring within the range of its sanction in the nature of personal liability for delinquencies in connection with debts incurred before the person against whom liability is asserted became an officer or director or after he ceased to occupy such official position. Bank of Mutual Redemption v. Hill, 56 Maine 385, 96 Am.Dec. 470; Risdon Iron & Locomotive Works v. Von Storch, 3 Cir., 166 F. 936; Judson Manufacturing Co. v. Wyckoff, 60 Cal.App. 305; 213 P. 269; Carpenter Paper Co. v. Noble, 140 Colo. 486, 345 P.2d 731.

■ The debt for which the Blairs seek recovery of a personal judgment against Mueller is for the balance due on the purchase price of the radio and television station. The option contract into which the parties entered obligated the Blairs to sell the station for a specified sum payable in a specified manner; and it obligated Vander Jagt or his assigns to pay therefor the specified sum in the specified manner. Radio became the assignee of Vander Jagt; upon the adoption of the resolution of the directors of Radio under date of May 4, the obligation of Radio to pay such amount in the specified manner became absolute, subject only to the approval of the Federal Communications Commission of the transfer of the license; and upon the approval of the transfer of the license, the respective obligations of the Blairs and Radio became absolute and constituted a contract open to enforcement in the courts. Talbott v. Nibert, 167 Kan. 138, 206 P.2d 131. The indebtedness of Radio had its origin in the option contract. It became absolute before Mueller became a director of the corporation. And it has continued ever since, except insofar as the payment obtained through the bankruptcy proceedings extinguished it pro tanto. The giving of the note did not extinguish the existing debt. Neither did it create a new debt. The debt remained the same and had the single source. Schwab v. Schlumberger Well Surveying Corp., 145 Tex. 379, 198 S.W.2d 79, 168 A.L.R. 1074. Not being a director at the time the debt was incurred,

Mueller is not liable under section 17–2806, supra. Bank of Mutual Redemption v. Hill, supra; Risdon Iron & Locomotive Works v. Von Storch, supra; Judson Manufacturing Co. v. Wycoff, supra; Carpenter Paper Co. v. Noble, supra.

The judgment is affirmed.