SPIES *vs.* GILMORE and others.

Where a note, specifying no place of payment, was made and endorsed in the state of New-York, but the maker and endorser resided in a foreign country, and continued to reside there when the note fell due, their place of residence being known to the payee and holder, both when the note was given and when it matured; *held*, that presentment of the note to the maker, demand of payment from him, and notice to the endorser, were necessary in order to charge the endorser.

Spies *v.* Gilmore,

F. being indebted to S., in order to obtain further time for payment, executed to him a note payable to the order of S. Before the note was delivered to S., G. endorsed it. The purpose for which the note was made being known to him, and it being part of the arrangement that he should become security for F. *Held*, that G. was liable only as endorser, and not as a joint maker, or as a guarantor.

The case of *Hall* v. *Newcomb*, in error, (7 *Hill*, 416,) referred to, and the doctrine there established, reaffirmed.

On error from the supreme court. Adam W. Spies sued Robert Gilmore, John Jewett and George W. Jewett, in the superior court of the city of New-York, upon a bond given in a proceeding by attachment instituted by Spies against Gilmore as a non-resident debtor. The bond bore date October 20th, 1841, and was executed by Gilmore as principal, and by the other defendants as his sureties. The condition of the bond was such, that the plaintiff's right to recover depended upon the question whether, at the time the proceeding was instituted, he was a creditor of the said Gilmore, and the facts relating to that question, as proved on the trial, were as follows: On the 16th of September, 1835, one John Furlong executed to the plaintiff his promissory note, as follows:

"$530,07.                         New-York, Sept. 16, 1835.

Six months after date, I promise to pay to the order of Mr. Adam W. Spies five hundred and thirty $\frac{07}{100}$ dollars, value received.                    JOHN FURLONG."

The defendant Robert Gilmore was the first and only endorser on this note. At the time the note was given, Furlong was indebted to the plaintiff in the amount thereof for goods sold to him by the plaintiff, at a credit of six months, which had expired. Furlong applied for a further credit of six months, and proposed to give the defendant Gilmore as security. The plaintiff agreed to the proposal. This arrangement took place in the presence of Gilmore, and in pursuance thereof Furlong executed and Gilmore endorsed the above note. The note was made and endorsed in the city of New-York, but both the maker and endorser then resided at Matamoras, in Mexico, and continued to reside there when it came to maturity; and their residence was known to the plaintiff. There was some

Spies *v.* Gilmore.

evidence tending to show that when the note fell due the plaintiff wrote to the maker and endorser at Matamoras, stating the non-payment of the note, and requesting payment, but there was no evidence that the note was presented to the maker or any other demand made upon him than by the letter aforesaid.

The superior court ruled, and so charged the jury, that under the circumstances of the case, as they appeared in the evidence, no demand and notice were necessary to enable the plaintiff to sustain the action. The defendants excepted. A verdict and judgment for the plaintiff were had in the superior court. The supreme court, on writ of error, reversed such judgment. (*See* 1 *Barbour's Sup. Court Rep.* 158.) And from the decision last mentioned the plaintiff brings error to this court.

*Charles O'Conor*, for the plaintiff in error. Furlong the maker, and Gilmore the endorser, having been both residents of Mexico, a foreign country, at the maturity of the note, the plaintiff was entitled to recover without evidence of demand or notice. (2 *Burr.* 1077; *Brown* v. *Harraden*, 4 *T. R.* 148; 1 *R. S.* 768, § 1; *Chitty on Bills*, 400, 485, *note e*, 8*th Am. ed.;* *Magruder* v. *Bank of Washington*, 9 *Wheat.* 598; *Anderson* v. *Drake*, 14 *John.* 117; *Hepburn* v. *Toledano*, 10 *Mart.* 643; *Story on Prom. Notes*, § 236; 1 *Dev. Law R.* 247; *Taylor* v. *Snyder*, 3 *Denio*, 151; 20 *John.* 102; 1 *id.* 94; 7 *T. R.* 242; *Co. Litt.* 210, *B.* ; 3 *Cov. Powell on Mort.* 939, *note u.* ; 2 *Smedes & Marsh.* 553; 8 *N. Hamp. Rep.* 413; 20 *Maine Rep.* 325; 1 *Bingh. N. C.* 151; *Consequa* v. *Fanning*, 3 *John. Ch. Rep.* 588; 17 *John.* 518; *Cox et al.* v. *United States*, 6 *Peters*, 203; *Story's Confl. Laws*, § 280; *Buckner* v. *Finley*, 2 *Peters*, 590; *ib.* 179, *App.* 2.)

The note ought to be held binding upon Gilmore as the joint and several note of himself and Furlong, or as a guaranty (*Hall* v. *Newcomb*, 3 *Hill*, 234, *S. C. in error*, 7 *id.* 420 · *Labron* v. *Woram*, 1 *id.* 93; 2 *id.* 84; 4 *id.* 421; *Dean* v *Hall*, 17 *Wend.* 217.)

*A. Crist*, for the defendant in error.

BRONSON, J. There are a few cases in the books which hold, in effect, that a written contract of one kind may be turned into a contract of a different kind, by parol proof concerning the intention of the parties; that the endorser of a promissory note may, under certain circumstances, be charged as maker or guarantor; and that the guarantor of a promissory note may sometimes be charged as maker or endorser. Although these cases stand upon no principle, it has been a work of some time and difficulty to get rid of them. The court of errors was at first equally divided on the question; but after a second argument the court decided by a pretty strong vote to uphold contracts as they had been made by the parties, instead of making new contracts for them. (*Hall* v. *Newcomb*, 3 *Hill*, 233, *and* 7 *id.* 416, *S. C. in error, and note, p.* 426; *Seabury* v. *Hungerford*, 2 *id.* 80; *Manrow* v. *Dunham*, 3 *id.* 587, *per Bronson, J.*) The work was not completed until after this proceeding had been commenced, and the case had been disposed of in the superior court. It is evident from the declaration that the plaintiff expected to recover on the ground that Gilmore might be charged as maker or guarantor. But the court of errors having overturned that doctrine, the plaintiff now seeks to uphold the judgment on another ground. He insists that as Furlong, the maker, lived at Matamoras, out of this state, and out of the United States, at the time the note fell due, no demand of payment from the maker, nor notice of non-payment, was necessary for the purpose of charging Gilmore as endorser. No such exception to the general rule, which requires demand and notice, has ever been sanctioned by the courts; and *Taylor* v. *Snyder*, (3 *Denio*, 145,) is a case in point against the plaintiff. It is not pretended that the maker had absconded, or removed out of the state, after the note was made; nor that there had been any other change of circumstances to excuse the want of a demand. So far as appeared on the trial, the maker still continued to reside at Matamoras, in Mexico, where he resided when the note was given, as the plaintiff well knew. The only excuse which has been offered for not making demand is, that it would have been incon-

venient to go or send to Matamoras for that purpose. It is often inconvenient to present the note for payment when the maker and holder both reside in the same state; and yet when the maker has a known place of residence, and there has been no change of circumstances after the giving of the note, mere trouble or inconvenience to the holder has never been held a good excuse for omitting the demand. And this is so, however wide asunder the maker and the holder may live. If the plaintiff wished to avoid the inconvenience of sending to Matamoras, he should have made the note payable in New-York, or got an endorsement with a waiver of demand. He has no right to change the contract which the endorser made, for the purpose of promoting his own convenience.

If the demand could be dispensed with, the endorser was still entitled to notice of the default of the maker, and that the holder looked to the endorser for payment; and there is no color of excuse for omitting to give notice. The giving of it would have cost the plaintiff no trouble, beyond sending a letter by the next ship which sailed for Matamoras, where the endorser lived. The plaintiff attempted to prove that this was done; but there was a defect in the evidence. If there had been proof enough to carry the cause to the jury on that point, it would not aid the plaintiff; for the question was not left to the jury. The judge instructed them that neither demand nor notice was required by law to entitle the plaintiff to his action. The truth evidently is, that the cause was tried upon the doctrine which has since been finally exploded, that Gilmore might be charged as maker or guarantor of the note. He was in fact endorser, and nothing else; and as such he was entitled to notice

I am of opinion, upon both grounds, that the reversal by the supreme court (1 *Barb.* 158) was correct, and that their judgment should be affirmed.

JEWETT, Ch. J.    The case of *Hall* v. *Newcomb*, (7 *Hill*, 416,) is in point to show that Gilmore cannot be made liable to Spies, as *guarantor* or *maker* of the note. The material question

then is, Was there proof given on the trial, sufficient to charge him as *endorser?* The evidence showed that both the maker and endorser at the time of making and endorsing the note, as well as at the time of its maturity, were residents of and doing business at Matamoras in Mexico, and that these facts were known to Spies, who at the same time resided in New-York, where the note was drawn, dated and endorsed. There was no evidence given to show either a demand of payment of the maker, at maturity, and notice of non-payment to the endorser, or of any facts constituting an excuse for omitting to make such demand, or any efforts to make it and give such notice, other than to show the residence of the maker and endorser to have been in Mexico, a foreign country. It is insisted in behalf of the plaintiff, that upon that ground the law excuses any demand and notice. The general rule of law is, that when a promissory note is not made payable at any particular place, in order to charge the endorser, payment must be demanded of the maker personally, or at his dwelling house, or other place of abode, or at his counting house or place of business. The note in question is not made payable at any particular place. There are, however, exceptions to this general rule, by which any demand is dispensed with. It is a question of diligence, and if a demand is found to be impracticable, proper efforts for that purpose having been made, the endorser will still be held liable, due notice having been given to him by the holder. These exceptions are enumerated in the opinion of the court delivered by Mr. Justice Beardsley in *Taylor* v. *Snyder,* (3 *Denio,* 151,) and embrace cases under the following circumstances: 1. When the maker has absconded, that will ordinarily excuse a demand; and notice of the fact is sufficient to hold the endorser. 2. When the maker is a seaman on a voyage, having no domicil in the state, the endorser is liable without a demand being made; but if he has a domicil in this state, although he be absent on a voyage, payment must be demanded there. 3. Where the maker has no known residence or place at which the note can be presented for payment. 4. Where a note is made by a resident of the state, who, before it is payable, removes from the

state and takes up a permanent residence elsewhere, the holder need not follow him to make demand, but it is sufficient to present the note for payment at the former place of residence of the maker.

These exceptions to the general rule, as Judge Beardsley remarked, it will be seen, all rest on peculiar reasons.  In the first, the maker has absconded ; in the second, he is temporarily absent, and has no domicil or place of business within the state ; in the third, his residence, if any he has, cannot be ascertained ; while in the fourth, he has removed out of the state and taken up his residence in another country.  In each of these instances, let it be observed, the fact constituting the excuse, occurs *subsequently* to the making and endorsement of the note ; and it is this new and changed condition of the maker, *and that only,* by which the endorser stands committed, without a regular demand.  And this is just : for it is but reasonable to suppose that neither party, when the note was given, looked for this new and changed condition of the maker, and that each contracted upon the supposition that no such change would take place.

It is obvious that the case at bar is not within either exception to the general rule dispensing with a demand and notice.  No change in the condition of either party has taken place since the note was made and endorsed.  The maker and endorser, I repeat, respectively had a residence in Mexico at the time the note was made in New-York, which remained unchanged at the maturity of the note, and which was known to the plaintiff at each period of time.  If the exception now insisted upon is made, it must rest upon some principle not hitherto recognized by any rule of law, as I think is abundantly shown by the opinion in the case to which I have referred.

I cannot assent to the truth of the position assumed, that because the maker and endorser of a promissory note at the time of the making and endorsing reside in another state or foreign country, the endorser may be held liable without any demand being made on the maker ; especially when such residence was known to the holder at the time the note was made and has

not been changed before the maturity of it. And in this there is no injustice: for it is but reasonable to conclude that each party contracted upon the supposition that the holder should make a demand of payment on the maker at maturity, at the place of his residence, and if not paid give notice to the endorser, or else a *place* as well as time of payment would be stipulated for in the note itself. To hold that a demand and notice can be dispensed with on the ground that the maker and endorser resided in a foreign country at the time of the making and maturity of the note, would, in my judgment, be nothing short of judicially changing the terms and legal effect of the contract between these parties. I think the judgment of the supreme court should be affirmed.

GARDINER, J. *dissenting.* I cannot assent to the opinion, that a demand of the maker was necessary in this case. By his endorsement, the defendant contracted that if the note was duly demanded of the maker and not paid, *or if* after the exercise of *due diligence* no such demand could be made, he would on receiving due notice pay the amount to the endorsee or holder. (14 *John.* 117.) The question is whether due diligence required that a demand should be made of the maker, under the circumstances disclosed by the evidence.

In *Anderson* v. *Drake,* (14 *John.* 114,) it was held that where the note is not payable at a particular place, and the maker has a known and permanent residence within the state, the holder is bound to make demand at such residence. The rule applies where there has been a change of residence by the drawer subsequent to the making the note, as well as to other cases. In *McGruder* v. *Bank of Washington,* (9 *Wheat.* 601,) it was decided that where the maker of a note had removed into another state subsequent to the making, no demand was necessary. So also in *Anderson* v. *Drake,* (*supra,* 117,) and in *Taylor* v. *Snyder,* (3 *Denio,* 146.) Justice Beardsley, in delivering the opinion of the court, after a very able review of all the cases, came to the conclusion that demand and notice must be given where the drawer of the note at the time of the making

Spies *v.* Gilmore.

and when it fell due, had a known residence in *one* of the *United States*—the payee residing and the note being given in this state.

The question is now presented in a new form, whether the payee, in the exercise of due diligence, is required to follow the maker to a foreign country in order to make a demand.

If the legal effect of the contract of the endorser is as stated by the learned judge in *Snyder* v. *Taylor,* namely, that it requires a demand except in those cases where it "shall be found impracticable," the plaintiff was not excused in this instance, since it was possible to have demanded payment of the maker when the note matured. But I apprehend that this is stating the condition of the endorser's liability a little too broadly. In *McGruder* v. *Bank of Washington,* it was neither impossible or inconvenient to have demanded payment, as the maker lived, after his removal from the district of Columbia to the state of Maryland, only nine miles from the holder. The court determined, as matter of law, that due diligence did not require a demand under such circumstances. They say, " on this point there is no other rule that can be laid down which will not leave too much latitude as to place and distance." The rule was adopted as a rule of convenience, and not on account of its abstract justice. The reasoning of the court is applicable to the case before us. In the absence of direct authority, we are called upon not to make a new *exception* to the general rule, but to apply that rule to a new class of cases. Expediency, public convenience, it seems to me, require that the necessity of a personal demand should be confined to cases where the maker resides within the states or territories of the Union. It is difficult to prescribe any other rule which will not leave " too much latitude as to place and distance," and of course be fluctuating when it should be certain. Instances will readily occur to every one, in which the making of a demand in a foreign country would be attended with little inconvenience, and others in which it would be impracticable. Between these extremes there is a wide interval which would be opened to litigation, which sound policy requires to be closed. The case of *Hepburn* v. *Toledano,* (10 *Martin's R.* 643,) and the remarks of Judge

Story in his treatise, are opposed to the·extension of the privilege of an endorser further than they have been carried in *Snyder* v. *Taylor*, even if the criticism of Judge Beardsley upon that case is in all respects correct. Looking then to the nature of the instrument in question, as essentially domestic in its origin and uses; to public convenience, which demands certainty in the general rule, rather than strict equity in special cases; and to the extent of the country under the government of the United States, I have come to the conclusion that no demand was necessary in this case in order to charge· the endorser.

Judgment affirmed.