James P. Witherow, Appellant, v. John D. Slayback et al., Respondents.

1. Appeal — Effect of Dismissal of Complaint at Close of Plaintiff's Case. An exception to the ruling dismissing the complaint at the close of the plaintiff's case calls upon the appellate courts to determine whether upon the plaintiff's proofs he was entitled to go to the jury, and opens for review a question raised by the pleadings and the proofs, although not urged on the motion to dismiss.

2. Notes — Indorsement Qualified by Parol Evidence. As between the original parties, the apparent rights of the indorser on the face of the note and the contract of indorsement may be qualified and changed by parol evidence, and the intention of the parties established by showing the facts and circumstances of the transaction.

3. Effect of Contract of Indorsement. *Quære*, whether the ordinary contract of indorsement creates a debt when entered into, without regard to the subsequent maturity of the note, demand and due protest.

4. Indorser as Principal Debtor. If, as between the parties, the indorser is shown to be the principal debtor, the note having been made for his accommodation, or, in other words, that he has no recourse against the maker, then it is not the strict contract of indorsement, and demand and notice are not necessary.

5. Business Corporation — Directors' Liability on Failure to File Annual Report — Note Indorsed by Corporation — Real Relation of Corporation to Note Shown by Parol. When, in an action

to charge the directors of a business corporation with a corporate debt, claimed to have been in existence when the corporation was in default for failure to file the annual report, by reason of a promissory note indorsed by the corporation, the defendants endeavor to avoid liability, by insisting that on the face of the note and indorsement the corporation is a strict indorser, only contingently liable when the paper is due and the indorser charged. and that protest was after the annual report had been filed, the plaintiff should be allowed to show by parol evidence of the real transaction that the corporation was in reality the principal debtor and therefore liable to the plaintiff before the default in filing the report was cured.

6. EXTINCTION OF CORPORATION, AS REASON FOR FAILURE TO FILE REPORT, NOT ESTABLISHED. The contention that a business corporation was not in default by reason of its failure to file an annual report, because it had ceased to exist, by abandoning its business and turning over its property to its creditors, before the time for filing the report, is not sustained when it appears that the corporation continued to exercise acts of absolute ownership over certain of its property, and subsequently filed a report of full payment of its capital stock and filed an annual report the next year.

*Witherow* v. *Slayback*, 11 Misc. Rep. 526, reversed.

(Argued March 16, 1899; decided April 18, 1899.)

APPEAL from a judgment of the General Term of the late Superior Court of the city of New York, entered February 4, 1895, affirming a judgment dismissing the complaint at the close of plaintiff's case.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward C. Perkins* for appellant. The court below erred in dismissing the complaint as to the first and second causes of action. (*Schmittler* v. *Simon*, 114 N. Y. 176 ; *Morrill* v. *C. T. S. Mfg. Co.*, 32 Hun, 543 ; *Brockway* v. *Allen*, 17 Wend. 40 ; *Bank of Genesee* v. *Patchin Bank*, 19 N. Y. 312.) The obligation which, at the time suit was brought, was represented by the indorsement on the October note, was an obligation to pay the sum specified at the time the note matured, irrespective of any demand on the maker or of any default on his part. (*Coulter* v. *Richmond*, 59 N. Y. 478 ; *Shaw* v. *White*, 13 Johns. 179 ; *Patch* v. *Washburn*, 16 Gray, 82 ; *Kingsland* v. *Koepper*, 137 Ill. 344 ; *Sturtevant* v. *Ran-*

dall, 53 Me. 149 ; Strong v. Riker, 16 Vt. 554 ; Seymour v. Mickey, 15 Ohio St. 515 ; Cook v. Brown, 62 Mich. 473 ; Daniel on Neg. Inst. §§ 710, 711 ; Cady v. Bradshaw, 116 N. Y. 188.) The obligation upon which the suit is based "existed" when the default occurred in January, 1887. It was "contracted" when the first note was given in April, 1886, if not before, and was, therefore, "contracted" before the report of February, 1887, was filed. (Boughton v. Otis, 21 N Y. 264 ; Carr v. Risher, 50 Hun, 147 ; Morgan v. Hedstrom, 25 App. Div. 547 ; S. & H. Co. v. Bliss, 27 N. Y. 299 ; Byers v. F. C. Co., 106 Mass. 135.)

Henry Bacon and Charles Strauss for respondents. The question whether the company was liable otherwise than as an indorser, and irrespective of any demand on the maker, or of any default on his part, is not open upon this appeal. (H. Ins. Co. v. W. T. Co., 51 N. Y. 93 ; Hall v. Erwin, 66 N. Y. 649 ; Duryee v. Lester, 75 N. Y. 442 ; Lockwood v. Quackenbush, 83 N. Y. 607 ; Salisbury v. Howe, 87 N. Y. 128 ; O'Neill v. N. Y., O. & W. R. Co., 115 N. Y. 579 ; Post v. M. R. Co., 125 N. Y. 697 ; Moses v. Hatch, 21 App. Div. 468 ; Moore v. Cross, 19 N. Y. 227 ; Meyer v. Hibscher, 47 N. Y. 265.) The company was not liable except as indorser. (Seabury v. Hungerford, 2 Hill, 80 ; Hall v. Newcomb, 3 Hill, 233 ; Spies v. Gilmore, 1 N. Y. 321 ; Cottrell v. Conklin, 4 Duer, 45 ; Strong v. Sheffield, 66 Hun, 349 ; Meise v. Newman, 76 Hun, 341 ; Holz v. W. B. Co., 83 Hun, 192 ; 3 Kent Com. 88 ; Spencer v. Harvey, 17 Wend. 489 ; Seacord v. Miller, 13 N. Y. 55 ; Wheeler v. Newbould, 16 N. Y. 398.) No debt against the company accrued within the meaning of the statute until the note became due in April, 1887, and was duly protested. (Garrison v. Howe, 17 N. Y. 458 ; Jones v. Barlow, 62 N. Y. 202 ; W. A. Co. v. Barlow, 68 N. Y. 34 ; F. Nat. Bank v. Fenton, 23 Hun, 309 ; Gold v. Clyne, 134 N. Y. 262 ; Torbett v. Goodwin, 17 N. Y. Supp. 48 ; Oviatt v. Hughes, 41 Barb. 541 ; V. W. P. Co. v. Beecher, 26 Hun, 48.) The abandonment of business by a corporation in

August, 1886, made it unnecessary to file a report in 1887. (*Losee* v. *Bullard*, 79 N. Y. 404; *Bruce* v. *Platt*, 80 N. Y. 379; *Kirkland* v. *Kille*, 99 N. Y. 390.)

BARTLETT, J. This action is brought against three of the directors of the Port Henry Steel & Iron Company, Limited, to charge them with a debt of the corporation for having failed, as such directors, to file an annual report in January, 1886, and in January, 1887. These two defaults are stated, respectively, in the first and second causes of action.

The complaint contains five causes of action, but on this appeal only the first and second are involved.

The debt which the plaintiff in this action seeks to collect of defendants is represented by a promissory note, dated October 6th, 1886, made by T. F. Witherbee to the plaintiff's order for $11,072.68, payable six months after date, and indorsed by the Port Henry Steel & Iron Company through its treasurer, Andrew Dickey.

This note was a renewal of a similar note dated six months earlier, to wit, April 3d, 1886.

The report due January, 1886, was not filed. The report that was due January, 1887, was filed on February 16th, 1887.

The Port Henry Steel & Iron Company was incorporated under the Laws of 1875, ch. 611, and it is sought to charge the defendants, as directors, by virtue of the provisions of section eighteen, which provides, in case of failure to file the annual report, that " all the directors thereof shall be jointly and severally liable for all the debts of the corporation then existing, and for all that shall be contracted before such report shall be made."

If the plaintiff is to succeed in this action, he is bound to prove either that, at the time of default in filing the annual report, the debt in suit existed, or that it was contracted before the overdue report was filed.

The default continued from January, 1886, to February 16th, 1887.

The position of the defendants is that whatever obligation was assumed by the Port Henry Steel & Iron Company is expressed by the indorsement on the back of the note, and the relation of the company to the debt is thereby fixed ; that, in order to make the company liable upon this contract, it was necessary that the note should become due; that the maker should refuse to pay it; that payment of it should be demanded and the note duly protested ; that, as protest was not made until April 9th, 1887, no debt of the corporation existed, or was contracted, during the period of default in filing the annual report.

The position of the plaintiff is that when the original note and the renewal note were given by T. F. Witherbee, he was the superintendent and an officer of the company, and that the note was indorsed, delivered and accepted in payment for a balance due plaintiff for material furnished and labor done prior to December 12th, 1885, in constructing a steel plant for the manufacture of steel and iron on the land of the corporation under a contract with Witherbee ; that the plant was intended for and was used by the corporation ; that the contract was adopted by it; that it made various payments to the plaintiff on account, and that it indorsed the note in suit, intending to become surety for its payment and to procure credit for Witherbee and itself.

The pleadings and the proofs will be examined more in detail later.

The case was tried at a jury term, and the plaintiff gave evidence tending to prove the position already outlined.

At the close of plaintiff's case the counsel for defendants moved to dismiss the complaint on a number of grounds covering the five separate causes of action. As to the first and second causes of action, the only ones involved on this appeal, the court granted the motion on the ground that during the period of default in filing the annual report the liability of the corporation to the plaintiff was merely contingent, and did not ripen into a debt until the protest of the note in April, 1887, when the default no longer existed.

The plaintiff duly excepted to this ruling, and the General Term of the Superior Court of the city of New York affirmed the judgment entered at the trial.

A preliminary point is taken here by defendants, that the question whether the corporation is liable otherwise than as an indorser is not open on this appeal, as it was not urged on the motion to dismiss.

The question is raised by the pleadings and the proofs, and the exception to the ruling dismissing the complaint calls upon us to determine whether, upon the plaintiff's proofs, he was entitled to go to the jury. (*First Nat. Bank* v. *Dana*, 79 N. Y. 108; *Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459; *Frecking* v. *Rolland*, 53 N. Y. 424; *Stone* v. *Flower*, 47 N. Y. 566.)

It becomes necessary to examine the issues and the evidence more in detail. The complaint avers as to the first and second causes of action as follows: "That said Port Henry Steel & Iron Company, Limited, by its treasurer, or agent, thereto duly authorized, with the intent and purpose of becoming surety for the payment of said note, and with the intent and purpose of inducing this plaintiff to give credit to said Witherbee and to said corporation, and to forbear action against them, and each of them, upon said indebtedness, duly indorsed said note at or before the delivery thereof to this plaintiff, intending that this plaintiff should accept the same upon the strength of said indorsement. That this plaintiff, upon the strength of said indorsement, did accept said note, and gave credit to said Witherbee and said corporation, and forebore action upon such indebtedness against them, and each of them, as is hereinafter stated."

The answer denies these allegations of the complaint, and at the trial the plaintiff offered proof tending to sustain them. It appears that the case contains all the evidence and that plaintiff's proofs were admitted without objection.

The salient facts established by the plaintiff are as follows, viz.: The Port Henry Steel & Iron Company, Limited, was not fully organized until the latter part of May, 1885, and

earlier in that month a proposition was drawn by plaintiff and addressed to the company offering to deliver to the latter its steel plant for $21,450.00.

This proposition was accepted by T. F. Witherbee as superintendent of the company. It was then discovered that this contract antedated the formation of the company, and thereupon a second proposition was made out, being like the former one, except it was addressed to T. F. Witherbee individually, and was subsequently accepted by him in that capacity. The plaintiff went on and erected this steel plant on the premises leased by the company for the transaction of its business, and Witherbee never paid anything on the contract, but several payments were made by the company, reducing the indebtedness to the amount of the note referred to in the complaint, which is the balance due plaintiff.

Plaintiff, about April, 1886, was pressing for his money, and it was finally arranged that Witherbee should give him his note, which was dated April 3d, 1886, indorsed by the company. At or about this time Witherbee assigned to the company his contract with plaintiff to furnish the steel plant.

Mr. Dickey, the treasurer of the company, testified: " I told Witherbee that we had paid about half the price of the plant, that we gave a note for the balance or indorsement on the note for the balance, and we must have the plant for security for that, and Witherbee agreed to do so — to transfer it, to make such transfer — which he did. I think it was a few days before I indorsed that note that I obtained this transfer. The company was then in possession of this plant, and continued in possession of it until some time in August, 1886 ; it was operating the plant up to that time. At the time this note was indorsed that plant was the only plant the company had for manufacturing steel, and the only one they ever had to my knowledge."

Witherbee refused to give the original note of April 3d, 1886, to plaintiff unless it was indorsed by the company, as he had no interest in the transaction.

Witherbee swears that he made out the note of April 3d, 1886, and the renewal thereof of October 6th, 1886, upon the direction of the treasurer of the company, and that he never received any consideration therefor.

The company used this steel plant as its own from the time it was delivered, and, when financially involved, executed a mortgage thereon to its creditors before the first note matured.

The company seems to have exercised exclusive dominion over the property in every way.

The plaintiff and appellant now insists that, in this condition of the record, it was error to have dismissed the complaint.

While the question now presented is somewhat novel and not without its difficulties, we are of opinion that, in accordance with well-settled general principles, parol evidence, as between the original parties, was admissible to show the real transaction.

The liability of the defendant directors depends upon what the real relations of the company are to this matter.

The issues involve the entire history of this transaction between the original parties — no rights of third persons have intervened.

Mr. Daniel, in his work on Negotiable Instruments (§ 710), in commenting on the general admissibility of parol evidence to ascertain intention as between immediate parties, uses this language :

" When the note is negotiable the question is by no means capable of such easy and satisfactory solution ; but whatever diversities of interpretation may be found in the authorities on the subject, they very generally concur, though not with entire unanimity, that, as between the immediate parties, the interpretation ought to be in every case such as will carry their intention into effect, and that their intention may be made out by parol proof of the facts and circumstances which took place at the time of the transaction."

In section 711 the same writer says : " The ground upon which parol proof of intention and agreement in such cases is

admitted is that the position of the name upon the paper is one of ambiguity in itself — that it is not a complete contract as in the case of indorsement by the payee, which imports a distinct and certain liability; but rather evidence of authority to write over it the contract that was entered into, and that parol proof merely discloses and brings to light the terms of the unwritten contract that was made between the parties."

A large number of cases in this state have recognized the above principle, and the contract of indorsement has been varied and qualified by parol evidence.

In *Moore* v. *Cross* (19 N. Y. 227) it was held that one who, for the accommodation of the maker, indorses his note payable to a third person, is liable thereon to such payee as indorser. The plaintiff alleged in his complaint and proved at the trial that the note and indorsement were made with full knowledge that plaintiff took it in payment for coal sold and delivered to the maker.

In *Bank of Genesee* v. *Patchin Bank* (19 N. Y. 312), S. B. S., a cashier, sent to the plaintiff to be discounted a bill of exchange of S. B. S., Cash., indorsed by him, with the same addition to his signature, and inclosed in a letter dated at the banking house, and signed S. B. S., Cash.

It was held, after receiving parol evidence of the entire transaction, that the circumstances imported that the indorsement was that of the bank in the regular course of business, and not that of S. B. S. individually.

In *Meyer* v. *Hibsher* (47 N. Y. 265) the action was upon a promissory note brought by the payee against the indorser; the complaint alleged that the note was executed and indorsed as a condition of a loan by the payee to the makers, and as security for the payment thereof, and then set out the note which, by its terms, was given "for value received."

This court held that the averments were sufficient to authorize evidence of the indorser's privity with the negotiation, and that if he indorsed with full knowledge of the facts, he was placed in the same condition to the payee as though it had been done by agreement.

83

In *Coulter* v. *Richmond* (59 N. Y. 478) it was held that the presumption that one who has indorsed a promissory note in blank, before the delivery to the payee, intended to become liable simply as second indorser and so not liable to the payee, may be rebutted by parol proof that the indorsement was made to give the maker credit with the payee.

To the same effect are *Jaffray* v. *Brown* (74 N. Y. 393); *Good* v. *Martin* (95 U. S. 90); *Patch* v. *Washburn* (82 Mass. 82).

The same principle is recognized in the following cases: *Phelps* v. *Vischer* (50 N. Y. 69); *Clothier* v. *Adriance* (51 N. Y. 322); *Hubbard* v. *Matthews* (54 N. Y. 43); *Hubbard* v. *Gurney* (64 N. Y. 457); *Breneman* v. *Furniss* (90 Penn St. 186).

We thus see that between the original parties the apparent rights of the ind'·ser on the face of the note and contract of indorsement are constantly qualified and changed by parol evidence.

In the case at bar the plaintiff seeks to charge the directors of a corporation, and the latter endeavor to avoid liability, by insisting that on the face of the note and indorsement the corporation is a strict indorser, only contingently liable when the paper is due and the company is charged; also that protest was after annual report filed.

This plaintiff, payee, urges that both on principle and authority he should be allowed to show the real transaction, the true situation, in order to establish that this corporation was privy to the consideration of the note, and was on the facts liable to the plaintiff, and that its directors cannot shield themselves behind the technical defense of the strict contract of indorsement.

We are of opinion that the parol evidence showing the history of the indebtedness which resulted in the notes in question, was properly received and should have been submitted to the jury.

The defendants' counsel has cited the case of *Hall* v. *Newcomb* (3 Hill, 233; 7 Hill, 416) as a controlling authority

against the plaintiff on this appeal. The question in that case was whether a person who puts his name in blank upon the back of a negotiable note, which is drawn in such form that he may be charged as indorser in the usual mode, if a demand is made and notice of non-payment given, can be charged as a general surety, without such demand and notice by parol evidence merely. It appeared that the holder of the note had neglected to make demand and give notice of non-payment to the indorser, and then sought to hold him, after he was discharged, by showing a different contract.

On the special facts of that case it was well decided and is not in conflict with plaintiff's position here, or the cases to which reference has already been made.

In the case at bar the note was duly protested, and the question here does not concern protest, but is one between the plaintiff and the directors of the corporation, based on the real relations of the corporation to the plaintiff's claim.

In *Hall* v. *Newcomb* no such question arose as is here presented. It was not claimed that Newcomb had received the consideration of the debt — was, in fact, the debtor. It was an effort to hold him as guarantor when, under the facts, he was a strict indorser. *Spies* v. *Gilmore* (1 N. Y. 321) is to same effect.

The counsel for the plaintiff has sought, on this appeal, to maintain two distinct propositions, among others, viz. : The first one is that the ordinary contract of indorsement creates a debt when entered into without regard to the subsequent maturity of the note, demand and due protest.

The case of *Barclay* v. *Weaver* (19 Penn. St. 396) and other cases in foreign jurisdictions, are cited to the effect that demand and notice are no part of the contract, but only steps in the legal remedy upon it.

We express no opinion on this proposition as to its correctness, or whether it is an open question in this state.

The other proposition is, in substance, that if, as between the parties, the indorser is shown to be the principal debtor, the note having been made for his accommodation ; or, in

other words, that he has no recourse against the maker, then demand and notice were not necessary ; that it was not the strict contract of indorsement.

In *Commercial Bank* v. *Hughes* (17 Wend. 94), Judge COWEN says : "Where the indorser or drawer has plainly suffered nothing, and can sustain no mischief for want of demand and notice, none need be made or given ; and it accords with the true and only reason why such demand and notice are called for. The question seems to be merely one of evidence.

"The drawer or indorser is presumed to have been injured by the omission, until the plaintiff, by proof on his side, remove all chance of damage."

In *Mechanics' Bank* v. *Griswold* (7 Wend. 168), Judge NELSON, in speaking of when notice to the indorser is not necessary, goes on to say : "Thus, where the indorser is himself the debtor, as where the note is discounted for his accommodation, and the money raised upon it is received by him, and therefore he ultimately holden to pay it, it is obvious that the reason of the rule cannot apply." (See, also, *Ray* v. *Smith*, 17 Wall. 415 ; Story on Promissory Notes, §§ 268, 357.)

The plaintiff's counsel bases on this second proposition the argument that if he succeeds in establishing a state of facts that shows the indorser was himself the debtor and not entitled to due notice of protest, then the debt that is sought to be collected of the defendants, as directors of the corporation, was either contracted when the first note was given, April 3d, 1886, or was at that time an existing debt, having its origin when the steel plant was delivered by plaintiff to the corporation.

We are of opinion that this is a question that the plaintiff is entitled to litigate on a new trial, and if he succeeds in showing to the satisfaction of a jury that the corporation is really the principal debtor of the plaintiff in this transaction, then the debt did not arise at the time of due notice of protest, but existed when the original note was given on the third of April, 1886.

The defendants raised the point at General Term and again urge it here, that the plaintiff is not entitled to recover under the second cause of action, to wit, the failure to file a report within twenty days after the first day of January, 1887, for the reason that in August, 1886, the company abandoned its business and franchises, and turned over all its property to its creditors.

It is sufficient answer to this point that the plaintiff's debt, if this action is to be maintained, was contracted and existed prior to August, 1886, when it is alleged that the corporation ceased to exist. As the record now stands, however, it is quite clear that the corporation did not cease to exist in August, 1886. On August 13th, 1886, the corporation released and surrendered to certain creditors property described, in consideration of extending payment of its indebtedness, with covenant on part of creditors that they would return the property to the corporation at any time prior to January 1st, 1887, on conditions named. On the 24th day of August, 1886, the corporation mortgaged certain personal property to the same creditors.

It was proved that these transfers did not embrace all of the property of the corporation, and some of the omitted portion was hypothecated to secure other creditors.

The real significance of these transactions consists in the fact that the company exercised acts of absolute ownership and dominion over certain of the property involved in this action.

In addition to this the record discloses that the corporation filed in the office of the secretary of state on the 28th day of January, 1887, a certificate of payment of the entire capital stock of the company, and that on the 18th day of February, 1887, and in January, 1888, filed in the same office its annual reports.

It thus appears that the company did not cease to exist in August, 1886.

The counsel for the appellant argues one exception to the rejection of evidence.

The deposition of the maker of the note was read on the trial and the witness was asked this question: "Q. Did the company agree to relieve you from the payments which you were to make?"

This was objected to as immaterial, irrelevant and incompetent because it is not the best evidence.

There was no evidence that the agreement referred to was in writing. The proper objection to the question was that it called for a conclusion as to the nature of the agreement.

As the error in this ruling was at best technical the plaintiff is not in a position to urge his exception. The information sought for was relevant under a proper form of question.

The judgment appealed from should be reversed and a new trial granted, with costs to the plaintiff in all the courts to abide the event.

All concur, except PARKER, Ch. J., and O'BRIEN, J., not voting.

Judgment reversed, etc.