### GRAHAM v. YORK.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1910.)

BILLS AND NOTES (§ 519*)—MAKERS—EVIDENCE.

Evidence in an action on a note *held* insufficient to authorize a finding that an indorser thereon was, in fact, the principal debtor, the maker, and the one primarily liable.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 519.*]

Kruse and Robson, JJ., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Allie B. Graham against Fred T. York, administrator of Anson E. York, deceased. From a judgment for plaintiff, and from an order denying a motion to set aside the verdict, and for a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Delos M. Cosgrove, for appellant.
John B. Rogers, for respondent.

SPRING, J. The action is to recover on a loan of $3,600 alleged to have been made by the plaintiff to the defendant's intestate on March 6, 1906, and represented by a promissory note renewed every six months. The first note and each renewal purport to be made by the Watertown Sand Brick Company as maker, and to be indorsed by A. E. York, the said defendant's intestate; and it is the claim of the appellant that the loan was made to the brick company as the notes indicate. It is incumbent upon the plaintiff, therefore, to establish by a fair preponderance of evidence at least that the instrument itself does not express the real liability of the parties, but that York was the maker and the one primarily liable to the plaintiff for its payment. It seems to me she has not met this burden.

The plaintiff is a married woman, and the business pertaining to the giving of the notes and the payment of the interest was carried on in her behalf by her husband. The whole evidence upon which the liability of York is established, in spite of the notes themselves

---

and the other documentary proof and the method in which the business was transacted, comes from the husband. York is dead, and his version of the transaction cannot be had. In view of that fact, the unsupported evidence of this man Graham in hostility to the other undisputed evidence should be scrutinized with considerable care before this defendant is made to pay the sum of over $4,000 which she is not liable to pay if the contract of indorsement was the one entered into by A. E. York. Scheu v. Blum, 119 App. Div. 825, 104 N. Y. Supp. 887; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916.

While Graham does not come under the ban of section 829 of the Code of Civil Procedure, he is vitally interested in maintaining this judgment, for it rests upon his testimony. He testified that in March, 1906, his wife had $3,600 to loan, and York said he would take it, giving her good security, and later explained that he meant the bonds of the Watertown Sand Brick Company, which bonds she declined to accept. He then stated that he was "perfectly good for this amount, $3,600," and was worth $40,000, and that he would also have Simons & Aldridge sign the note. On the same day he called at the office of York, which was the office of the brick company of which he was president, and accepted a note due in six months for $3,600, given by the brick company and indorsed by Simons & Aldridge and York, and Graham delivered to York the check which his wife had for $3,600. Graham read the note, saw it was given by the brick company as maker, and bore the indorsements already stated. No deception was practiced, and no attempt made to conceal the true character of the note. The check delivered to York was placed in the bank to the credit of the brick company. The evidence is clear that York received no part of the avails of the loan. They all went to the benefit of the brick company, and were used in paying its obligations. As the notes fell due from time to time the interest was paid, and renewal notes given. The interest each time was paid at the office of the brick company by its checks generally signed by its treasurer and charged to its account at the bank, and upon each renewal note York was an indorser. The last note was given September 6, 1907, to the order of the plaintiff due in six months, executed by the brick company as maker and indorsed by Root, York, and Simons & Aldridge. York died November 27, 1907, before the note became due. All the other notes of the series were renewed at the brick company office either before or on the day of maturity, so that not one was ever presented to the bank where it was made payable. The last note was never presented for payment to the place of payment, and was never protested for nonpayment, and there is no claim that the defendant is liable by reason of the contract of indorsement of York, Sr. The sole claim is that it was his note, that he was the debtor primarily liable to the plaintiff.

In the spring of 1908 the Watertown Sand Brick Company was adjudged a bankrupt, and the plaintiff presented to the trustee in bankruptcy a claim duly verified by her, setting forth that she had loaned this sum of $3,600 to the brick company, and upon the strength of this claim her husband, in pursuance of a formal power of attorney executed by her, participated in the meetings of the creditors

of the bankrupt estate, and voted for a trustee thereat. Subsequently, and in July, 1908, she presented a verified claim to the defendant charging that York was liable as indorser on the note, which claim was promptly rejected. More than a year elapsed when she presented another verified demand to the defendant administrator, claiming that York had borrowed this money personally, and was the primary debtor. In order to evade this series of facts and circumstances unmistakably recognizing and establishing that the money was loaned to the brick company and that Anson E. York was an accommodation indorser on these notes, Frank Graham testified to conversations that he had with York, none of which could be gainsaid for no one was claimed to be present when they occurred except the two men, one of whom is now dead. Graham testified that when one of the notes matured in March, 1907, York told him he would like to sell him a farm which he, York, owned to pay this note, and Graham said he was "land poor now." If this conversation ever took place, it does not make to any extent for the plaintiff. York was liable as indorser. He, of course, expected that his liability would be kept alive by presentation, demand, and protest in case any note was not renewed or paid. He was interested in the brick company of which he was president, and, if he could sell the farm, he might have been willing to hold the note against the company. Again, in March, 1907, Graham asked for a payment of $500 on the note, and York did not wish to make the payment, for he intended to build an addition to the plant of the company. There is nothing in this conversation to indicate that York recognized or that Graham understood that the liability of any one on the note was different from what the note itself denoted. Certainly it gave no clue to the suggestion that York was admitting he was the primary debtor to the plaintiff for this loan of $3,600.

As to the conversation when the loan was made in March, 1906, it is quite evident that York was borrowing the money for the brick company. He was willing to become personally liable for the payment of the note. He knew that the plaintiff would rely upon his suretyship. He stated what he was worth, but he fixed definitely the character of his liability by indorsing the note. He did this openly and without any intent to cheat or mislead Graham, and each renewal with the payment of interest by the check of the brick company and the new note every six months upon which the comany was maker and York indorser demonstrate that Graham knew that the note expressed the true relation of the parties upon it. This first conversation was had in the presence of the plaintiff, and apparently, although it does not appear definitely, in the presence of Graham's father and stepmother. Not one of these parties testified. The terms of this initial arrangement are dependent wholly upon the testimony of Graham.

Graham on his direct examination testified that he had a talk with the administrator in December, 1907, relative to the note then outstanding. On cross-examination he was asked when he first made the claim that Anson York "was the principal debtor," and answered that it was in December, 1907. He gave no such testimony on his di-

rect examination. If correct, however, it is unimportant. It is a statement to the administrator and the note was not yet due, and the administrator would, of course, expect that the note would be protested for nonpayment and. the estate would therefore be liable for its payment. The administrator knew nothing of the original transaction, and could neither dispute nor affirm the. correctness of this story. Just why Graham was then making that kind of a claim does not appear, for the estate was not denying the genuineness of the note. Later on Graham was seeking to charge the brick company as maker and the estate as indorser, all of which is incompatible with the claim which is now made the basis of the cause of action.

The only question of fact submitted to the jury was whether the loan was made for the benefit of York. The verdict on this proposition, it seems to me, is contrary to the weight of the evidence, if there is any evidence at all to sustain it.

Two cases are cited in support of the rule that parol proof may be given for the purpose of showing that an indorser on a promissory note is in fact the principal debtor. I have no quarrel with that proposition, although it does not receive the unanimous support of the courts, and is allowed to prevail only when the facts are clear and definite. In the leading case cited (Witherow v. Slayback, 158 N. Y. 649, 53 N. E. 681, 70 Am. St. Rep. 507), a corporation was an indorser on the note, and the consideration of the debt was material furnished and labor done in the construction of a steel plant on its land and as a part of its property. The proof showed unmistakably that the note was for the benefit of the indorser, and that the apparent maker was a mere surety. I think the case has no application.

The defense interposed is not a technical one. The liability by indorsement on this note was far different than if York was the primary debtor. Had the note been protested for nonpayment, the defendant, if he paid the debt, could have exacted contribution from the other indorsers. If the note was for York's benefit, the administrator cannot compel the accommodation indorsers to pay any part of it. In order to protect the estate he represents, it was the duty of the administrator to defend the enforcement of a claim which was unfounded, if the previous acts of the plaintiff and the notes themselves and the other corroborating proof were correct.

I think the judgment and order should be reversed.

Judgment and order reversed, and a new trial granted, on the law and facts, with costs to appellant to abide event. All concur, except KRUSE, and ROBSON, JJ., who dissent in an opinion by KRUSE, J.

KRUSE, J. (dissenting). The only serious question here is whether the $3,600 obtained from the plaintiff was loaned to Anson E. York or to the corporation of which he was president. The complaint alleges that it was loaned to him, and the jury so found. I think the evidence warrants that finding, and that parol evidence was competent to establish that fact, and show that York was primarily liable, notwithstanding the form of the note. Witherow v. Slayback, 158 N. Y. 649, 53 N. E. 681, 70 Am. St. Rep. 507; Had-

dock, Blanchard & Co. v. Haddock, 192 N. Y. 499, 509, 85 N. E. 682, 19 L. R. A. (N. S.) 136.

The plaintiff had a check calling for $3,600. Anson E. York desired to obtain the money. He went to her home; told her that he would take the money, and give her good security; offered her bonds of his company. She refused to take the bonds. He stated that he was perfectly good, saying that he was worth at least $40,000; and, to make it still stronger, he would have the firm of Simons & Aldridge sign it. The next day the plaintiff's husband saw York. York handed him the note (which will be described presently) and received in return the check for $3,600. The note is dated March 9, 1906, payable six months after date, for $3,600, to the order of Simons & Aldridge at the National Bank & Loan Company, Watertown, N. Y., with interest, signed: "Wtn. Sand Brick Co., per A. E. York, Prest." The form of the promise contained in the note is, "We promise." Indorsements appear on the back thereof, in the following order: "Simons & Aldridge"; "A. E. York."

The interest on that note was paid and a renewal given, dated September 10, 1906. The renewal note was precisely like the original note, with the like indorsements thereon, except that it was also indorsed by F. H. Root, and dated as has been stated. The interest was paid and the note was again renewed. The check for the interest is dated several days after the renewal became due. The second renewal is not produced, but is said to be like the first renewal. The note was renewed for the third time, and that renewal bears date, September 9, 1907, payable six months after it is dated, and in all other respects the same as the original note, except that it is payable to the order of the plaintiff and the indorsements thereon are in the following order: "F. H. Root"; "Simons & Aldridge."

I need not repeat the several interviews between Graham, the plaintiff's husband, and York. That has been done in the prevailing opinion. It should, however, be stated in that connection that none of these notes was presented for payment to the bank where payable. Graham testifies that York always told him to come to him with the notes, and that he did so; that he did not tell him that the sand brick company was going to have the money that he was borrowing from the plaintiff for use in his business, and that after the death of York, and before the last renewal note became due, he (Graham) told the administrator that York was the principal debtor; and that was after he had learned that the sand brick company went into bankruptcy. The truthfulness of his evidence seems to be doubted, especially the interview which he had with the administrator; and yet the administrator does not deny that the statement was made to him. Graham could have had no object in making the statement at that time, as a basis for a false claim, since the note was not then due, and could have been presented and protested.

The fact that the money obtained from the plaintiff was used by the company of which York was president does not necessarily make that company the primary debtor as to the plaintiff. York could borrow the money himself, as I think the evidence shows he did, not-

withstanding the fact that he intended to and did pay it over to his company for its use.

Neither do I think that the statement presented to the trustee in bankruptcy and the administrator should have the controlling effect claimed therefor. The statements were evidently prepared by the lawyer, as the liability appeared from the form of the written obligation. Undoubtedly the plaintiff could enforce the claim in that form, but that should not preclude her from asserting her claim upon the loan by her to York. Accepting the note did not necessarily pay or extinguish York's obligation on the loan.

As regards the suggestion that York would be prejudiced in an action for contribution against his co-indorsers because of the failure to present the note for payment, and give the proper notice to the indorsers, that, as it seems to me, is a mere matter of conjecture. His right to contribution depends upon his contract with the others in becoming sureties for the brick company, and that question is not here. Of course, if York's only liability to the plaintiff is as indorser, and he is not liable on his contract of indorsement, that ends the case, and the question of contribution will not arise at all.