ISRAEL OLEET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9622.   Promulgated October 15, 1927.

Certain promissory notes received in payment of goods sold were debts ascertained to be worthless and charged off within the taxable year.

*Lawrence Koenigsberger, Esq.*, for the petitioner.
*R. A. Littleton, Esq.*, for the respondent.

This proceeding is for the redetermination of a deficiency asserted by the respondent for the year 1921, of $1,276.83, resulting from the disallowance by the respondent of certain deductions from gross income taken by the petitioner in his income-tax return for that year, and claimed to be bad debts ascertained to be worthless and charged off within said year. The deductions so taken by the petitioner in his 1921 return amounted to $10,796.01. The petitioner conceded that $1,164.98 of this amount was properly disallowed, leaving as the amount of deductions in controversy in this proceeding, the sum of $9,631.03.

FINDINGS OF FACT.

The petitioner is a diamond merchant, having his place of business at 87 Nassau Street, New York City. His sole business for some 20 years has consisted in the purchase and sale of diamonds and other precious stones. His sales are made either by himself, personally, or through agents or brokers. The sales are made sometimes for cash, but usually on time, the petitioner receiving the purchaser's promissory notes due from four to seven months after date. A separate promissory note is given for each payment. The agent or broker received one per cent commission on all goods sold by him, and was permitted to represent himself to the prospective purchasers as owner of the goods he was handling for the petitioner. When the agent, or broker, ascertained that he had a prospective customer, he secured possession of the stones from the petitioner for a short period in order to effectuate the sale. He then went to the customer, exhibited the goods, and, if a sale was effected, received from him cash or a promissory note or notes, or both, in the full amount of the sales price. Title to the property so sold passed to the purchaser on execution and delivery of his notes to the agent or broker. The broker was permitted by the petitioner to have, and did have, the notes executed in his own favor and an unwritten

agreement existed between the petitioner and broker that the latter was not liable on said notes after having endorsed and delivered them to the petitioner. The broker's commission of one per cent was paid by the petitioner coincidently with the delivery to him of the cash or with endorsement and delivery to him by the broker of the promissory notes involved in the sale. Upon delivery of the cash, or upon endorsement and delivery of the notes, by the broker to the petitioner, the broker's financial responsibility in the transaction terminated as between himself and the petitioner. The majority of the notes taken in payment for the goods sold were discounted by the petitioner at banks in the city of New York. Others were placed in banks in said city for collection. On failure of the makers of the notes to pay at the maturity thereof, said notes were protested and returned to the petitioner, the latter making payment to the bank in those cases where the notes had already been discounted by him.

Time payment sales made to purchasers residing in the City of New York, whether made through agents or otherwise, were not consummated until approved by the petitioner; but for such sales as were made by agents to purchasers beyond the city limits, the petitioner accepted the word of said agents that the purchasers were financially responsible.

The petitioner had no bookkeeper, but kept a record of notes received by him in two notes receivable books. All deposits were entered by the petitioner in the deposit side of his check books. The total of the notes received by the petitioner in a given year, as recorded in the notes receivable books, plus the cash sales for the same year, as recorded in the check books, represented the petitioner's gross sales for that year and was so reported by him in his return for said year. All of the sales giving rise to the items here involved were made in the years 1920 and 1921 and, in each instance, the entire sales price received by the petitioner in the form of cash and/or promissory notes was reported by him as gross income in the year of sale. At the close of and within the year 1921, the petitioner charged off as bad debts certain accounts due him on promissory notes received from vendees to whom he himself had made sales; and also certain amounts due him on promissory notes executed by other vendees in favor of petitioner's agent or broker, and endorsed and delivered by said agent or broker to him under the arrangement above set forth. Of the notes here in controversy, the original amounts charged on, the payments received thereon, and the amounts charged off in 1921 as bad debts were as follows:

11340°—28——55

| Debtor | Amount of debt | Amount received | Amount charged off |
|---|---|---|---|
| For sales made by petitioner himself: | | | |
| George Crystal | $4,062.50 | $812.50 | $3,250.00 |
| Davidson Diamond Jewelry Co | 3,557.35 | 1,778.68 | 2,134.39 |
| Harry Elkin | 400.00 | ------------ | 400.00 |
| Frank Cohen | 230.00 | ------------ | 230.00 |
| | 8,249.85 | 2,591.18 | 6,014.39 |
| For sales made through an agent: | | | |
| R. Steiner | 1,697.93 | ------------ | 1,697.93 |
| Liberty Loan Shop | 650.00 | ------------ | 650.00 |
| West Side Diamond Shop | 454.00 | ------------ | 454.00 |
| Louis A. Cohen | 534.71 | ------------ | 534.71 |
| Joseph Weiss | 540.00 | 260.00 | 280.00 |
| | 3,876.64 | 260.00 | 3,616.64 |

George Crystal, the Davidson Diamond Jewelry Co., the Liberty Loan Shop, and the West Side Diamond Shop, each went into voluntary or involuntary bankruptcy during the year 1921. George Crystal paid 20 per cent and the Davidson Diamond Jewelry Co. 50 per cent to their creditors on composition agreements confirmed in 1921 by the court having jurisdiction of the bankruptcy proceedings. The Liberty Loan Shop and the West Side Diamond Shop paid nothing to their creditors, all of their known assets being used in defraying the expenses of the bankruptcy proceedings; the petitioner was apprised of their financial conditions prior to the charge-off in 1921. The remaining five debtors removed from their respective places of business within the year 1921, without notifying the petitioner thereof, and diligent search before the close of the year 1921, failed to disclose their whereabouts; none of them left any property from which recovery could be made, and no payment has since been received from any of them.

The following debts were ascertained by the petitioner to be worthless and were charged off by him within the year 1921: George Crystal, $3,250; Davidson Diamond Jewelry Co., $1,778.67; Harry Elkin, $400; Frank Cohen, $230; and R. Steiner, $1,697.93; Liberty Loan Shop, $650; West Side Diamond Shop, $454; Louis A. Cohen, $534.71; and Joseph Weiss, $280; making a total of $9,275.31.

OPINION.

LANSDON: At the close of the year 1921, petitioner charged off $10,796.01 as bad debts ascertained to be worthless and deducted said amount from the gross income reported by him for that year. According to the deficiency notice, the respondent disallowed said deduction for lack of evidence as to whether certain items included therein had been reported as income during the current year or some

prior year, and on account of insufficient evidence as to whether the remaining items were, in fact, ascertained to be worthless and charged off during the taxable year 1921.

The petitioner conceded that $1,164.98 of the deductions so taken was erroneous, leaving the sum of $9,631.03 as the amount involved in this proceeding. As indicated by our findings of fact, the petitioner deducted $2,134.39 as representing a worthless account resulting from the bankruptcy of the Davidson Diamond Jewelry Co. The court order confirming the composition offered by the bankrupt to its creditors discloses that the petitioner received in 1921, 50 per cent of the debt. We are therefore of the opinion that in 1921 the petitioner actually ascertained that only the remaining 50 per cent (or $1,778.67) of the Davidson Diamond Jewelry Co. account was worthless. The petitioner's bad debt claim with respect to the Davidson Diamond Jewelry Co. account is therefore allowed to the extent of $1,778.67 and disallowed as to the remainder, or $355.72.

The debts owing to the petitioner from R. Steiner, Liberty Loan Shop, West Side Diamond Shop, Louis A. Cohen, and Joseph Weiss, resulted from sales negotiated by an agent or broker (Toepfer). Inasmuch as the promissory notes of these debtors held by the petitioner had been made payable to the agent or broker and endorsed by him, on delivery thereof, to the petitioner, it seems advisable to determine whether the petitioner held a legal claim against said agent as endorser. There was an unwritten agreement between the petitioner and said agent that the latter would not be liable on these notes after having endorsed and delivered them to the former. The true intention of endorsers to a negotiable instrument, as between themselves, can always be shown by oral evidence. *Kohn* v. *Consolidated Butter & Egg Co.* (1900) 63 N. Y. S. 265, 266; *Witherow* v. *Slayback* (1899) 158 N. Y. 649; 53 N. E. 681.

On the facts disclosed by this proceeding it is clear that the petitioner held no legal claim against his agent on presentation of the promissory notes to their makers for payment and default in payment.

We are of the opinion that the petitioner has established that debts in the amount of $9,275.31 were ascertained by him to be worthless and charged off at the end of the taxable year 1921 and, as such, are allowable deductions from gross income for that year.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by GREEN and ARUNDELL.